Docket No. 15 Civ. 6851 (AKH)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

P.R.C. on behalf of herself and her child, G.G.C.,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION;
NEW YORK CITY BOARD OF EDUCATION; and
CARMEN FARIÑA, in her official capacity as
Chancellor of the New York City School District,

Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS**

**ZACHARY W. CARTER**
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-306
New York, N.Y.  10007-2601

*Of Counsel:*   Lesley Berson Mbaye
*Telephone:*    (212) 356-0897

Matter No. 2015-040723

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT .................................................................................................. I

STANDARD OF REVIEW ......................................................................................................... 1

STATEMENT OF FACTS .......................................................................................................... 3

POINT I ...................................................................................................................... 6

THIS COURT SHOULD REFRAIN FROM AJUDICATING THIS ACTION AND DISMISS THE COMPLAINT UNDER THE YOUNGER ABSTENTION DOCTRINE ................................................................................................. 6

POINT II .................................................................................................................... 9

PLAINTIFFS' DUE PROCESS CLAIM FAILS BECAUSE SHE DOES NOT HAVE A CONSTITUTIONALLY PROTECTED PROPERTY INTEREST IN A SEAT IN A GIFTED & TALENTED PROGRAM ................................................................................................ 9

A.   Plaintiff Does Not Have a Cognizable Property Interest in a Seat in the Gifted & Talented Program .................................................................................... 10

B.   Plaintiff Received all the Process she was Due ................................. 13

CONCLUSION ......................................................................................................................... 16

# TABLE OF AUTHORITIES

**Federal Cases**

Adams v. New York State Educ. Dep't,
   No. 08 Civ. 5996 (VM) (AJP),
   2010 U.S. Dist. LEXIS 15635, *93 (S.D.N.Y. Feb. 23, 2010) ................................................. 10

Ashcrosft v. Iqbal,
   556 U.S. 662, 678 (2009) ........................................................................................................... 2

Bd. of Regents v. Roth,
   408 U.S. 564, 569 (1972) .................................................................................................... 10, 13

Chambers v. Time Warner, Inc.,
   282 F.3d 147, 153 (2d Cir. 2002) ............................................................................................. 2

Christ the King Regional School v. Culvert,
   815 F.2d 219, 224 (2d Cir.),
   cert. denied, 484 U.S. 830 (1987) ......................................................................................... 7, 9

Cleveland Bd. of Educ. v. Loudermill,
   470 U.S. 532, 542 (1985) ......................................................................................................... 13

Cleveland v. Caplaw Enters.,
   448 F.3d 518, 521 (2d Cir. 2006) ............................................................................................. 2

Corp. v. Twombly,
   550 U.S. 544, 570 (2007) ......................................................................................................... 2

De Jesus v. Sears, Roebuck & Co.,
   87 F.3d 65, 70 (2d Cir. 1996) ................................................................................................... 3

DiFolco v. MSNBC Cable L.L.C.,
   622 F.3d 104, 111 (2d Cir. 2010) ............................................................................................. 2

Does v. Mills,
   No. 04 Civ. 2919 (RWS), 2005 U.S. Dist. LEXIS 6603, *18 (S.D.N.Y. Apr. 18, 2005) .......... 9

DSI Assocs. LLC v. United States,
   496 F.3d 175, 186 n.16 (2d Cir. 2007) .................................................................................. 10

Epperson v. Arkansas,
   393 U.S. 97, 104 (1968)) ........................................................................................................... 8

Evans v. N.Y. Botanical Garden,
   No. 02 Civ. 3591, 2002 U.S. Dist. LEXIS 16434, at *11-12 (S.D.N.Y. Sept. 4, 2002) ........... 2

H & H Acquisition Corp. v. Fin. Intranet Holdings, Inc.,
   669 F. Supp. 2d 351, 357 (S.D.N.Y. 2009) ............................................................................. 2

Immediato v. Rye Neck School Dist.,
   73 F.3d 454, 462 (2d Cir. 1996) ............................................................................................... 8

Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,
   62 F.3d 69, 72 (2d Cir. 1995) ................................................................................................... 2

Johnpoll v. Elias,
  513 F. Supp. 430, 432 (E.D.N.Y. 1980) ........................................................ 8, 11, 12

Jones-Soderman v. Exec. Secy. of the State Bd.,
  No. 08 CV 4716 (SJF) (LB), 2010 LEXIS 99768, *11 (E.D.N.Y. May 21, 2010),
  report & recommendation adopted by and complaint dismissed at
  2010 U.S. Dist. LEXIS 99779 (E.D.N.Y., Sept. 20, 2010) ........................................ 7

Ky. Dep't of Corr. v. Thompson,
  490 U.S. 454, 460, (1989);
  adopted by, in part, objection granted by, dismissed without prejudice by
  2010 U.S. Dist. LEXIS 33794 (S.D.N.Y., Apr. 6, 2010) ........................................ 10

Mathews v. Eldridge,
  424 U.S. 319, 333-34, (1976) ................................................................. 13

Narumanchi v. Bd. of Trs. of Conn. State Univ.,
  850 F.2d 70, 72 (2d Cir. 1988) ............................................................... 13

Ohio Civil Rights Comm'n v. Dayton Christian Schools. Inc.,
  477 U.S. 619, 627 (1986) ...................................................................... 7

Phelps v. Kapnolas,
  308 F.3d 180, 184 (2d Cir. 2002) ............................................................. 2

Piazza v. Fla. Union Free Sch. Dist.,
  777 F. Supp. 2d 669, 677 (S.D.N.Y. 2011) ..................................................... 2

Pinckney v. Board of Educ.,
  920 F. Supp. 393, 396-397 (E.D.N.Y. 1996) .................................................... 7

Rodriguez v. Weprin,
  116 F.3d 62, 65 (2d Cir. 1997) ............................................................... 3

San Antonio Independent School Dist. v. Rodriguez,
  411 U.S. 1, 35 (1973) ........................................................................ 11

Schachter v. Whalen,
  445 F. Supp. 1376, 1380 (S.D.N.Y. 1978) ...................................................... 7

Weixel v. Bd. of Educ.,
  287 F.3d 138, 146 (2d Cir. 2002) ............................................................. 3

Younger v. Harris,
  401 U.S. 37 (1971) ........................................................................... 6

**State Cases**

Britt v. Rogers,
  108 A.D.2d 855, 856 (2d Dep't 1985) ....................................................... 8, 11

Hoffman v. Board of Education,
  49 N.Y.2d 121, 127 (N.Y. 1979) ............................................................... 8

Matter of Bennett v. City School Dist.,
  114 A.D.2d 58, 62-63 (2nd Dep't 1985) ....................................................... 11

<u>Matter of R.B. v Department of Educ. of the City of N.Y.</u>,
   Index. No. 100738/2013, 2013 N.Y. Misc. LEXIS 3412, *16
   (Sup. Ct. N.Y. Co., Aug. 1, 2013)........................................................................ 8, 12

<u>New York Civil Liberties Union v. State of New York</u>,
   4 N.Y.3d 175,178 (2005) .................................................................................... 11

**Statutes**

42 U.S.C. § 1983 .................................................................................................... 6

N.Y. Educ. Law § 310 ...................................................................................... 5, 6, 8

N.Y. Educ. Law § 3202(1) ................................................................................... 11

**Rules**

8 N.Y.C.R.R. §§ 275-276 ....................................................................................... 5

Fed. R. Civ. Proc. 12(b)(6) .......................................................................... 1, 3, 16

## PRELIMINARY STATEMENT

This action is predicated on the score that the then-four-year old G.G.C. received on a test to qualify for the Defendant New York City Department of Education's Gifted & Talented Program for her kindergarten year of school. G.G.C. scored below the qualifying requirement for this Program, and Plaintiff P.R.C. attributes this to a host of purported errors committed by the Defendant. Plaintiff claims that her daughter has a constitutionally protected interest in a seat in the Gifted & Talented Program – notwithstanding her below-qualifying score – based either on the Defendant's Sibling Priority Program or on the score that G.G.C. "should have" received.

This Court should dismiss these allegations and the Complaint for one of two reasons. The Court should either abstain from ruling on this matter pursuant to the *Younger* abstention doctrine, because Plaintiff is pursuing a case raising the identical claims before the Commissioner of the New York State Education Department, and that body is best equipped to weigh in on matters of educational policy. Should the Court decline to abstain, the Complaint still must be dismissed on the merits because it is well-established that there exists no constitutionally protected property interest in attending a particular school program.

Thus, the Defendants, New York City Department of Education, New York City Board of Education, and Carmen Fariña, Chancellor of the New York City School District, bring this motion asking that the Complaint be dismissed in its entirety either on abstention grounds or pursuant to Fed. R. Civ. Proc. 12(b)(6) for failure to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion, the Court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in favor of the plaintiff. See Cleveland v.

Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006); Phelps v. Kapnolas, 308 F.3d 180, 184 (2d

Cir. 2002).  To survive the motion, a plaintiff must plead sufficient factual allegations in the

complaint to "state a claim [for] relief that is plausible on its face."  Bell Atl. Corp. v. Twombly,

550 U.S. 544, 570 (2007).  The complaint does not need "detailed factual allegations," but it

demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do."  Id. at 555.  In addition, the facts pled in the complaint "must be enough to

raise a right to relief above the speculative level."  Id.  "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice."  Ashcrosft v. Iqbal,

556 U.S. 662, 678 (2009).

   In deciding the motion, the Court "may consider the facts alleged in the

complaint, documents attached to the complaint as exhibits, and documents incorporated by

reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir.

2010).  "Even where a document is not incorporated by reference, the [C]ourt may nevertheless

consider it where the complaint 'relies heavily upon its terms and effect,' which renders the

document 'integral' to the complaint."  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d

Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir.

1995)).  Additionally, the Court may refer to matters of which "judicial notice" may be taken.  H

& H Acquisition Corp. v. Fin. Intranet Holdings, Inc., 669 F. Supp. 2d 351, 357 (S.D.N.Y.

2009); see also Evans v. N.Y. Botanical Garden, No. 02 Civ. 3591, 2002 U.S. Dist. LEXIS

16434, at *11-12 (S.D.N.Y. Sept. 4, 2002) ("A court may take judicial notice of the records of

state administrative procedures, as these are public records, without a converting a motion to

dismiss to one for summary judgment.")); Piazza v. Fla. Union Free Sch. Dist., 777 F. Supp. 2d

669, 677 (S.D.N.Y. 2011).

In <u>pro se</u> cases, the Court "must construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests."  <u>Weixel v. Bd. of Educ.</u>, 287 F.3d 138, 146 (2d Cir. 2002) (citation omitted).   However, even though <u>pro se</u> complaints are construed liberally on a motion to dismiss, a "complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)."  <u>De Jesus v. Sears, Roebuck & Co.</u>, 87 F.3d 65, 70 (2d Cir. 1996); <u>see also</u> <u>Rodriguez v. Weprin</u>, 116 F.3d 62, 65 (2d Cir. 1997).

## STATEMENT OF FACTS

When the child G.G.C. was four years old and preparing to enter kindergarten, her parents arranged for her to take the test for the New York City Department of Education's ("DOE") Gifted & Talented Program ("G&T Program").  <u>See</u> Complaint of Paula Rogowsky Cohen, dated August 28, 2015 ("Complaint") at ¶¶ 83, 84.  G.G.C.'s parents were familiar this process, as they have an older child who took the exam and currently attends one of the Department's G&T Programs.  <u>Id.</u> ¶ 74.  Additionally, information concerning the procedures and substance of the G&T admissions tests can be found in the DOE's G&T Program Handbook, available on the DOE's website.  <u>See</u> G&T Program Handbook for students seeking placement in September 2015 ("G&T Handbook" or "Handbook"), annexed to the Declaration of Lesley Berson Mbaye, dated October 13, 2015 ("Mbaye Decl.") as Exhibit "A."  The Handbook sets forth all the information students and their families need: a description of the program; the procedure for requesting and scheduling test dates; descriptions of the two-part assessment; scoring; various placement options and more.  <u>Id.</u> at 1.  The Handbook also includes a section titled "Appeals Process for the Test Administration," which clearly states that parents must report any perceived problem with test administration to the DOE, in writing, within 48 hours of the exam administration.  <u>Id.</u> at 8.

As described in the Handbook and the Complaint, the DOE operates two types of G&T programs. The first, District G&T Programs, are offered within district elementary schools and offer priority to students who are zoned for that local district school. Compl. ¶¶ 27-28. Citywide G&T Programs, in contrast, accept eligible students who reside anywhere in the five boroughs and do not give any priority based on the district where a student resides. Id. ¶ 29. Students must score in at least the 90th percentile to be eligible to apply for District G&T Programs, and must score in the 97th percentile or above to be eligible to apply to the Citywide G&T Programs. See G&T Handbook at 9; Compl.¶ 34. These programs are popular, and for many of them, there are not enough seats to accommodate all the students who meet the admission criteria. Compl. ¶ 53.

In addition to these eligibility requirements, the DOE also applies a Sibling Priority Policy, pursuant to which eligible siblings of students already enrolled at an elementary school are given priority for admission. Id. ¶ 19; see also Chancellor's Regulation A-101, annexed to the Mbaye Decl. as Exhibit "B." Siblings applying to a Citywide G&T Program must first meet the 97th percentile mark before the Sibling Priority Policy will be applied. Compl. ¶¶ 35, 78, 162; see also G&T Handbook at 10.

Four-year old G.G.C. took the two-part G&T Assessment on February 1, 2015. Compl. ¶¶ 83, 84. She scored in the 99th percentile on one part and in the 73rd percentile on the other, leading to a final rank of the 93rd percentile. Id. ¶¶ 96, 97. This made her ineligible for Citywide G&T Programs, including the Anderson School, the particular Citywide G&T Program attended by her sibling. Id. ¶¶ 74, 98.

Plaintiff believes G.G.C.'s scores could only have been the result of DOE error. (Compl. ¶ 131), and alleges that one, some, or all of the following errors were to blame for her

4

daughter's score: G.G.C. did not receive a required break during the test administration (id. ¶ 132), she was not allowed to take the test at her own pace (id. ¶ 135), the DOE improperly calculated her score by purportedly "rounding-up" her age (id. ¶ 141), the DOE improperly calculated her score by not utilizing national norms (id. ¶ 150), and finally that G.G.C. "had difficulty understanding her test proctor's accent." (Id. ¶ 153)

Although the purported errors concerning test breaks, pacing, and the proctor's accent would have been immediately apparent, Plaintiff did not report these or any other alleged problem with the assessment's administration until after she received G.G.C.'s score on April 6, 2015.  Compl. ¶ 95.  Upon such receipt, Plaintiff directly emailed the Director of the DOE Office of Gifted & Talented Enrollment (compl. ¶ 103), and quickly received a response that G.G.C.'s scores had been correctly calculated (id. ¶ 104).  Just one week later, on April 14, 2015, Plaintiff spoke with DOE staff members from the DOE's Office of Assessment concerning the scoring of G.G.C.'s test.  Id. ¶¶ 108-109.  The following month, Plaintiff was able to review G.G.C.'s test accompanied by a member of the DOE's Office of Assessment.  Id. ¶¶ 118-120.

Dissatisfied with the DOE's response, Plaintiff filed a petition with the Commissioner of the New York State Education Department ("SED") pursuant to N.Y. Education Law § 310 and 8 N.Y.C.R.R. §§ 275-276, seeking, *inter alia*, an order that DOE allow G.G.C. to re-take the G&T assessment and that the assessment be scored according to the method Plaintiff deemed proper.  See Compl. ¶ 113; see also Verified Petition to the New York State Education Department, dated May 5, 2015 ("Petition") (without original exhibits), annexed to the Mbaye Decl. as Exhibit "C."  The DOE answered, and opposed, the petition, and the proceeding is currently *sub judice*.  Compl. ¶ 115.  Plaintiff filed the Complaint in the instant action on August 28, 2015, making many of the same factual allegations.  See ECF dkt. no. 1.

Plaintiff's federal action is brought pursuant to 42 U.S.C. § 1983, and alleges the violation of her 14th Amendment due process rights. Specifically, Plaintiff claims that the procedure to appeal G.G.C.'s G&T Assessment score was constitutionally infirm, and that G.G.C. was deprived of her substantive property interests in the Sibling Priority Program and a seat in the G&T Program. Compl. ¶¶ 193-198. She seeks, *inter alia*, an injunction requiring the Defendants to admit G.G.C. into the Anderson School. Id. at 29.

## POINT I

### THIS COURT SHOULD REFRAIN FROM AJUDICATING THIS ACTION AND DISMISS THE COMPLAINT UNDER THE YOUNGER ABSTENTION DOCTRINE

Plaintiff has already filed a petition with the Commissioner of the New York State Education Department ("SED") pursuant to N.Y. Education Law § 310 raising the same issues as those raised in the instant action. See Compl. ¶ 113; compare Petition at ¶ 1 (appealing Defendant's "denial" of Plaintiffs' right to appeal G.G.C.'s G&T assessment score, and Defendant's scoring and administration of that assessment) with Compl. ¶¶ 69-73, 103-119, 157-158 (alleging insufficiency of G&T assessment appeals process), id. at ¶¶ 131-156 (alleging errors with DOE's scoring of G&T assessments). That petition has been fully briefed and is currently *sub judice*. Compl. ¶ 113-116. The *Younger* abstention doctrine requires that this Court abstain from adjudicating this action and dismiss the Complaint to allow the Commissioner of the State Education Department – the administrative body best equipped to decide matters of educational policy – to issue her decision.

In Younger v. Harris, 401 U.S. 37 (1971), the Supreme Court held that, "absent extraordinary circumstances, a federal court may not enjoin an ongoing state criminal proceeding." Jones-Soderman v. Exec. Secy. of the State Bd., No. 08 CV 4716 (SJF) (LB), 2010

LEXIS 99768, *11 (E.D.N.Y. May 21, 2010), report & recommendation adopted by and complaint dismissed at 2010 U.S. Dist. LEXIS 99779 (E.D.N.Y., Sept. 20, 2010). The doctrine also applies to state administrative procedures. Id. (citing Ohio Civil Rights Comm'n v. Dayton Christian Schools. Inc., 477 U.S. 619, 627 (1986); see also Schachter v. Whalen, 445 F. Supp. 1376, 1380 (S.D.N.Y. 1978). *Younger* abstention applies to state administrative proceedings where: (1) there is an ongoing state quasi-judicial administrative proceeding, which (2) implicates an important state interest, and (3) there is an adequate opportunity to litigate any federal claims either in the administrative proceeding or in a state court judicial review proceeding. Pinckney v. Board of Educ., 920 F. Supp. 393, 396-397 (E.D.N.Y. 1996) (citing Christ the King Regional School v. Culvert, 815 F.2d 219, 224 (2d Cir.), cert. denied, 484 U.S. 830 (1987)).

All three *Younger* abstention factors are met in this case. First, Plaintiff admits that there is a fully briefed petition pending before the Commissioner of the New York State Education Department in which she seeks precisely the same relief she seeks here. Compl. ¶ 113. The SED is a "quasi-judicial body" for purposes of the *Younger* inquiry. See Pickney, 920 F. Supp. at 397 (holding that plaintiff's action before the Commissioner of SED satisfied the first *Younger* abstention requirement).

Second, Plaintiff's challenges to the DOE's G&T Program's procedures generally, its application of the Sibling Priority Policy, and the DOE's scoring of her daughter's assessment in particular all relate to the manner in which Defendants' discharge their municipal obligation to educate the children within their jurisdiction. As such, Plaintiff's charges relate to the important state interest of education, and are sufficient to meet the second *Younger* element. See Pickney, 920 F. Supp. at 397 (citing Immediato v. Rye Neck School Dist., 73 F.3d 454, 462

(2d Cir. 1996) ("the state has a compelling interest in educating its youth") (internal citation and quotations omitted)).

Indeed, decisions concerning student placement – such as that presented by Plaintiff here – have been held to be such "fundamental administrative decisions" that the federal court "cannot be used as a vehicle" to review them.  Johnpoll v. Elias, 513 F. Supp. 430, 432 (E.D.N.Y. 1980) (citing Epperson v. Arkansas, 393 U.S. 97, 104 (1968)).  It bears noting that New York State Courts have been equally loathe to intercede on this issue.  See Hoffman v. Board of Education, 49 N.Y.2d 121, 127 (N.Y. 1979) ("[A]ny dispute concerning the proper placement of a child  in a particular educational program can best be resolved by seeking review of such professional educational judgment through the administrative processes provided by statute.") (citing N.Y. Educ. Law § 310); Britt v. Rogers, 108 A.D.2d 855, 856 (2d Dep't 1985) ("absent a showing of a constitutional or statutory violation, a fundamental administrative determination concerning pupil placement, which is neither arbitrary nor capricious, will not be disturbed by the courts"); Matter of R.B. v Department of Educ. of the City of N.Y., Index. No. 100738/2013, 2013 N.Y. Misc. LEXIS 3412, *16 (Sup. Ct. N.Y. Co., Aug. 1, 2013) ("school administrators like the Chancellor have broad discretion to determine how educational programs are designed, and the courts should not interfere absent a showing that the administrators have acted in violation of law").  Matter of R.B. is particularly relevant, as that Court refused to interfere in the DOE's administration of precisely the same programs at issue here: the G&T Program and the Sibling Priority Policy.  See id. at *17 ("The sibling preference policy being implemented here, as well as the scoring methodology used to rank eligible G&T students, is an educational policy that falls within the DOE's discretion").  The discretionary nature of these programs does not change simply because they are now being challenged in federal court instead

of state court.  Regardless, the question raised herein relates to an "important state interest" that warrants abstention.

Although the SED Commissioner does not have jurisdiction over federal Constitutional questions, the fact that the Commissioner's decision may be appealed to State Court – which is permitted to address those questions – means that the third *Younger* requirement, that Plaintiff will have an adequate opportunity to litigate her putative federal claims, is also met.  See Does v. Mills, No. 04 Civ. 2919 (RWS), 2005 U.S. Dist. LEXIS 6603, *18 (S.D.N.Y. Apr. 18, 2005).  Does held that abstention was appropriate even where the state administrative proceedings could adequately address only the plaintiff's individual concerns, so long as the plaintiff could then raise the issue of whether those proceedings met Constitutional requirements in state court.  Id. (citing Christ the King, 815 F.2d at 224.)  Under this reasoning, the third *Younger* requirement is met, as Plaintiff will be able to appeal the Commissioner's decision to state court via an Article 78 proceeding in which she can raise any Constitutional claim she wishes.

Thus, all three *Younger* factors are met and the Court should abstain from adjudicating this action and, instead, dismiss the Complaint.

### POINT II

### PLAINTIFFS' DUE PROCESS CLAIM FAILS BECAUSE SHE DOES NOT HAVE A CONSTITUTIONALLY PROTECTED PROPERTY INTEREST IN A SEAT IN A GIFTED & TALENTED PROGRAM

Even if the Court declines to abstain, the Complaint should be dismissed on the merits.  To state a claim under the Fourteenth Amendment's Due Process Clause, a plaintiff must demonstrate that she possesses a constitutionally protected liberty or property interest, and that state action has deprived her of that interest. See U.S. Const. amend. XIV, § 1; see also, e.g., Bd.

9

of Regents v. Roth, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). Courts "examine procedural due process questions in two steps: (1) whether there is a liberty or property interest which has been interfered with by the State; and (2) whether the procedures associated with that deprivation were constitutionally sufficient." Adams v. New York State Educ. Dep't, No. 08 Civ. 5996 (VM) (AJP), 2010 U.S. Dist. LEXIS 15635, *93 (S.D.N.Y. Feb. 23, 2010) (citing Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460, (1989)); adopted by, in part, objection granted by, dismissed without prejudice by 2010 U.S. Dist. LEXIS 33794 (S.D.N.Y., Apr. 6, 2010). Here, Plaintiff fails to satisfy the first step because she does not have a cognizable property interest in the school program of her choice. As no constitutional interest is implicated, the procedures that were afforded to her to appeal her daughter's score do not implicate due process. Her claim must be dismissed.

**A.     Plaintiff Does Not Have a Cognizable Property Interest in a Seat in the Gifted & Talented Program**

Although federal law determines whether an interest rises to the level of a "legitimate claim of entitlement," Courts look to State law in the first instance to determine whether a property interest exists at all. See Adams, 2010 U.S. Dist. LEXIS 15635 at *94-96 (quoting DSI Assocs. LLC v. United States, 496 F.3d 175, 186 n.16 (2d Cir. 2007) (internal citation and quotation omitted); Roth, 408 U.S. at 577 ("Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.")

Plaintiff here asserts that her daughter had a property interest in the DOE's Sibling Priority Policy and its Gifted and Talented Program. See Compl. at ¶ 2. But the interest

she asserts has not been recognized by New York State law.  To the contrary, New York State courts have held that "there is no constitutionally protected interest to attend the school of one's choice."  Britt, 108 A.D.2d at 856.  New York courts recognize a statutory right to a sound basic education, but not a right to a seat in a particular program. See N.Y. Educ. Law § 3202(1); see also New York Civil Liberties Union v. State of New York, 4 N.Y.3d 175,178 (2005) (recognizing State constitutional right only to a "sound basic education"); Matter of R.B, 2013 N.Y. Misc. LEXIS 3412 at *16.  The federal courts have not expanded the parameters of this right beyond what is recognized by the State courts.  See, e.g., San Antonio Independent School Dist. v. Rodriguez, 411 U.S. 1, 35 (1973) (holding education is not a fundamental right); Johnpoll, 513 F. Supp. at 431-32 ("not being permitted to attend the school of [one's] choice is not tantamount to a denial of a right to an education").

In the face of this unequivocal case law, Plaintiff's claim that she has a cognizable property interest in a seat in a Citywide Gifted & Talented Program must fail.  Indeed, not only have New York State courts held that there is no right to a seat in a particular educational program, they have gone further to hold that even students who qualify for a gifted and talented program have no cognizable property interest in a seat in such a program.  See Matter of Bennett v. City School Dist., 114 A.D.2d 58,62-63 (2nd Dep't 1985) (holding that because DOE had choice to operate a G&T program or not, the school district had no affirmative duty to place qualifying student in the program).  Here, the Student G.G.C. did not even qualify for the program to which she claims a constitutionally protected "right" of enrollment.  Compare Compl. at ¶ 34 (qualifying score for Citywide Gifted & Talented program is 97th percentile) and id. at ¶ 97 (G.G.C. scored in the 93rd percentile on Gifted & Talented admissions test).

Plaintiff's claim to an entitlement to a seat in a particular Citywide G&T Program is similarly without merit.  Plaintiff relies on the Sibling Priority Policy set forth in Chancellor's Regulation A-101 to assert that G.G.C. has a property interest in a seat in the Anderson School, a Citywide G&T School, solely because G.G.C.'s sibling already attends the school.  See Compl. ¶¶ 75, 77.  The cited Regulation states that "[s]iblings of students already pre-registered or enrolled at an elementary school . . . are given sibling priority for admission into elementary school programs eligibility requirements as described below . . ."  Chancellor's Regulation A-101(II)(A)(3).  This language, however, is not sufficient to create a property interest in a seat in a sibling's school, as a school district's decisions as to student placement are wholly discretionary. See Johnpoll, 513 F. Supp. at 432 ("this court cannot be used as a vehicle to review fundamental administrative decisions such as student placement"); see also Matter of R.B., 2013 N.Y. Misc. LEXIS 3412 at *17 ("[t]he sibling preference policy . . .  is an educational policy that falls within the DOE's discretion").

The interplay between the Sibling Priority Policy and G&T Program advocated by Plaintiff would result in the former completely swallowing the latter: G&T Programs would be closed to students who did not have siblings that had previously qualified, and some of the attending siblings would be admitted but would not meet the required assessment scores that make those programs unique. Such an outcome would defeat the purpose of both admissions criteria.  Moreover, the explicit language of the G&T Handbook makes clear that only siblings who have achieved a qualifying score on the G&T assessments are afforded the benefit of sibling priority placement.  See G&T Handbook at 10 (stating that only "applicants" to Citywide G&T Programs may receive the sibling priority, and that a 97th percentile score is a prerequisite to being an applicant).

Therefore, a student has no cognizable property interest in a seat in a particular school or any particular program within a school; Plaintiff cannot establish the elements of her procedural due process claim, and it should accordingly be dismissed.

**B.      Plaintiff Received all the Process she was Due**

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Roth, 408 U.S. at 569.  As it has been established that Plaintiff has no cognizable property interest, the Court does not need to determine whether Plaintiff has adequately pled the second part of her procedural due process claim, which asks "what process was due to the plaintiff, and inquires whether that constitutional minimum was provided in the case under review." Narumanchi v. Bd. of Trs. of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988) (citing Mathews v. Eldridge, 424 U.S. 319, 333-34, (1976)).  However, if the Court should choose to examine this question, it should find that Plaintiff was afforded all the process she was due under the circumstances presented here.

Plaintiff alleges that she was afforded insufficient process to challenge G.G.C.'s score on the G&T Assessment because parents must challenge any alleged abnormalities in test administration within 48 hours of the test, and because DOE does not offer any appeals process after parents receive their children's test scores.  See Compl. ¶¶ 71, 72.  She further claims that Defendants do not provide adequate notice "of the existence of and access to" the 48-hour appeal window.  Id. ¶ 73.  Even assuming, *arguendo*, that Plaintiff did have a cognizable property interest in the G&T Program seat she prefers, Plaintiff was afforded the process she was due under the particular circumstances of this case.  See, e.g. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (due process requires notice and hearing "appropriate to the nature of the case").

To the extent that Plaintiff has a cognizable property interest in a seat in a G&T Program at all, the 48-hour appeal window to raise complaints about the test administration is itself adequate, and beyond that, her own extensive communications with the DOE concerning G.G.C.'s score and her guided review of G.G.C.'s actually test, have afforded Plaintiff all the process due, if not more.  The G&T Handbook clearly informs families that they have 48 hours to notify the DOE of any perceived irregularities in the G&T Assessment administration.  See G&T Handbook at 8.  Plaintiff's complaints concerning the test proctor – her purported accent (Compl. ¶ 154), her purported failure to provide a mandatory break (id. ¶ 134), and her purported refusal to let G.G.C. "take the test at her own pace" (id. ¶ 135) – are all the types of testing irregularities that would have been known to the Plaintiff immediately after the administration of the test, and thus could have properly been brought to the DOE's attention within the 48-hour appeal window.   Plaintiff's assertion that "Defendants did not provide [her with] adequate written notice" of the 48-hour appeals timeframe is difficult to accept at face value, when the policy is set forth in G&T Handbook under its own heading in the table of contents (see G&T Handbook at 1 ("Appeals Process for the Test Administration")).  As set forth clearly and simply on page 8 of the Handbook:

> If you wish to report a problem with any exam administration, you must do so in writing within 48 hours of the exam administration.  Concerns must be reported to the Office of Assessment, via email to:  ServiceCenter@schools.nyc.gov  or letter to: Office of Assessment, G&T Test Administration, 52 Chambers Street, Room 309, New York, NY 10007. Additional questions regarding assessments can be directed to the Office of Assessment at 212-374-6646.

Furthermore, the Complaint makes clear that Plaintiff took full advantage of the catch-all provision that a parent could raise "additional questions regarding assessments" with

the DOE.  Immediately upon receiving G.G.C.'s assessment scores on April 6, 2015, Plaintiff directly emailed the Director of the DOE Office of Gifted & Talented Enrollment.  Compl. ¶ 103.  Notwithstanding the G&T Handbook's provision that such questions were properly directed to the Office of Assessment, Plaintiffs received a response that G.G.C.'s scores had been correctly calculated.  Id. ¶ 104.  Just one week later, on April 14, 2015, Plaintiff spoke with DOE staff members from the Statistical and Assessment offices concerning the scoring of G.G.C.'s test.  See Compl. ¶¶ 108-109.  The following month, Plaintiff was able to review G.G.C.'s test accompanied by a member of the DOE's Office of Assessment.  Id. ¶¶ 118-120.  Put more succinctly, Plaintiff had access to no fewer than four members of DOE's expert staff with whom she could raise concerns about G.G.C.'s test administration and scoring, and ask questions about the testing protocol.  Such "opportunity to be heard" fully satisfies due process requirements where, as here, Plaintiff, does not have a constitutionally protected property interest in a G&T Program seat to begin with.  For this reason also, Plaintiff's due process claim should be dismissed.

## **CONCLUSION**

For all of the foregoing reasons, Defendants New York City Department of Education, New York City Board of Education, and Carmen Fariña, Chancellor of the New York City School District, respectfully request that their motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) be granted, that the Complaint be dismissed in its entirety and all relief requested therein be denied, and that the Court grant the defendant such other and further relief as the Court deems just and proper.

Dated:        New York, New York
              October 13, 2015

ZACHARY W. CARTER
Corporation Counsel of the
  City of New York
*Attorney for Defendants*
100 Church Street, Room 2-306
New York, New York 10007
(212) 356-0897

By:        /s/ *Lesley Berson Mbaye*
           Lesley Berson Mbaye
           Senior Counsel