NEW YORK STATE EDUCATION DEPARTMENT
-----------------------------------------------------------------------X
In the Matter of the Appeal of
The Parents of G.G.C.,                                                    Appeal No. _____

                                   Petitioner,
                                                                                **VERFIED PETITION**

   -against-

THE NEW YORK CITY
DEPARTMENT OF EDUCATION,

                                   Respondent.

From Respondent's Denial of Due Process Right of
Appeal of the Gifted and Talented Assessment and
From Respondent's Incorrect Administration and Scoring
Of Petitioner's Child's Gifted and Talented Assessment

-----------------------------------------------------------------------X

**TO THE COMMISSIONER OF EDUCATION:**

       **THE PARENTS OF G.G.C.**, by their attorneys, Shebitz Berman Cohen & Delforte, P.C., as for their Petition, respectfully allege:

       1. The Parents of G.G.C. ("Parents" or "Petitioner") bring this Petition appealing Respondent's New York City Department of Education's ("DOE" or "Respondent") (a) determination denying Parents the opportunity to appeal their child's administration, testing and scoring of the 2015 NYC Gifted and Talented assessment, despite the DOE's legal obligation to provide an appeal process for G.G.C.'s assessment; and (b) administration and scoring of G.G.C.'s 2015 NYC Gifted and Talented assessment. The parents' appeal is brought pursuant to New York Education Law §310, and 8 NYCRR §275-276.

       2. The parents also request that the Commissioner issue an order staying the DOE from validating G.G.C.'s OLSAT assessment score and directing the DOE to allow G.G.C. to re-take the OLSAT assessment again for the 2015-2016 school year and have it re-scored before the May 23rd,

2015 date by which the DOE will offer G&T placements to parents. As discussed in further detail below, without a stay in this case, G.G.C. will be irreparably harmed because the DOE's admissions decision, which is based on the OLSAT score, will be made on or before May 23, 2015. As a result, G.G.C. will be irreparably harmed because all seats at the Anderson School will have been determined by that time. On the other hand, the DOE will not be harmed at all by allowing G.G.C. the opportunity to re-take the assessment pending the Commissioner's decision about the underlying merits of this petition.

3. Specifically, this Petition concerns G.G.C.s Gifted and Talented assessment ("G&T assessment") taken on February 1, 2015 for admission to the NYC Gifted and Talented Program ("G&T program") for the 2015-2016 school year. G.G.C. is the sibling of a student at a citywide G&T program and, therefore, G.G.C. has sibling priority for admission to the same program as her sibling, if G.G.C. scores a 97th percentile or above on the combined Gifted and Talented assessment.

4. The DOE's G&T assessment is comprised of an OLSAT test, which consists of thirty (30) verbal questions, and a NNAT test, which consists of forty-eight (48) non-verbal questions. The DOE scores each test based on the student's "age at the date of testing" and assigns a percentile rank, along with a weighted score. Together the OLSAT and NNAT are weighted 50% each and are combined to make up a student's "combined percentile rank."

5. Pearson Education ("Pearson"),[1] the company that develops the G&T assessments for the DOE and provides consultation to the DOE regarding same, also scores assessments using the same "age at the date of testing", percentile rank, and weighted score.

---

[1] Pearson is the consultant testing company utilized by the DOE to produce, score and oversee the DOE's G&T testing assessments such as the OLSAT and NNAT.

6. The DOE did not provide parents of students taking the G&T assessment this year any information on changes in testing or scoring from prior years. Parents have no opportunity to find out if there have been any changes to the DOE's test protocol or analysis for this year's assessments.

7. In the weeks since G.G.C. took the assessments, serious concerns have arisen around this year's test, including potential errors in the administration and scoring process. These issues potentially affect not only G.G.C., but all of the incoming G&T testers this year.

8. Since G.G.C. has a sibling priority at the Anderson School (P.S. 334),[2] the Parents were devastated by the impact that these possible errors in the testing administration, processes, and procedures could have on their family, since their daughter, although qualified, would need to attend a school separate from her brother, for no legitimate reason.

9. G.G.C. took the assessment on February 1, 2015, and at the time of testing, her Parents were not aware of any appeal policy and had not received any notice of a DOE appeal policy.

10. Likewise, at the time of testing, the Parents could not yet have been aware of any errors in administration, testing or scoring that the DOE and/or Pearson could have made. Test results are not provided until over two months after the test is administered.

11. On April 6, 2015, the Parents received G.G.C.'s G&T assessment scores via email. The Parents immediately emailed Daniel Hildreth, Director of DOE Gifted and Talented Enrollment, to inquire about the serious discrepancies they noticed in their child's score. *See,* letter dated April 6, 2015, from Parents to Daniel Hildreth, Director of DOE G&T Enrollment, along with ensuing correspondence between Parents and G&T representatives, attached hereto and incorporated herewith as Exhibit "A."

---

[2] The Anderson School is a "Citywide" G&T DOE public school located in Manhattan.

12. G.G.C., a child with tested and confirmed superior verbal reasoning scores, scored a 73 percentile on the OLSAT portion of the assessment and a 99 percentile on the NNAT portion of the assessment. As a result, G.G.C. received a combined percentile rank of 93 percentile.

13. This combined score is an improbable discrepancy since this child scored in a superior range in verbal skills on the Stanford Binet testing several weeks prior to taking the G&T assessment. Upon information and belief, the Stanford Binet is known in the education community as a superior assessment of intelligence across age, abilities, and ethnicity.

14. Not surprisingly, since G.G.C.'s scores were so abnormal and unexpected, the Parents found out about many issues and irregularities around the administration, testing and scoring process for G.G.C.

15. For instance, G.G.C.'s age when she took the test was apparently calculated incorrectly. G.G.C. was placed in the age "4.9" scoring band. However, her age on the date of testing should have been "4.8".

16. The Parents conducted a careful review of the scoring overview with two different neuropsychologists, and each concluded that G.G.C. should have been placed in the 4.8 band.

17. The only reason that G.G.C. would have been placed in the 4.9 band is if the DOE created an equation to "round-up" student's ages in order to decrease their percentile rank scores. If the DOE did round-up without any rational basis for doing so, then such decision is irrational, arbitrary and capricious.

18. The DOE did not provide notice to parents of children who took the G&T exam that it created any such equation to round-up student ages in connection with this year's exam.

19. Upon information and belief, Parents DOE did not round-up student ages in connection with this year's exam. Accordingly, G.G.C. should have been placed in the 4.8 band.

4

20. Pearson's own testing and scoring help desk indicated that it does not have a protocol or policy that utilizes "rounding up" "age on the date of testing".

21. Upon information and belief, school districts in other parts of the country that utilize Pearson's OLSAT assessment indicate that they do not utilize any equation invoking "rounding-up" of "age on the date of testing".

22. As a result of this miscalculation, G.G.C. was compared to children up to "4.12", causing her test to be scored incorrectly. This rounding up error also affected her combined percentile ranks.

23. The rounding up error impacts the validity of the G&T assessments for all of the 2015 test takers. This miscalculation likely affected all of the children whose "age on the date of testing" was improperly calculated, which would affect the combined percentile ranks for all children taking the G&T assessment for the 2015-2016 school year.

24. There were other issues in the administration of this year's assessments, some of which affected G.G.C.'s assessment. Upon information and belief, G.G.C. had difficulty understanding her proctor on account of her accent.

25. Upon information and belief, the proctor's accent prevented her from providing clear, appropriate and valid directions on a test of verbal reasoning.

26. Upon information and belief, this resulted in a low raw score on G.G.C.'s OLSAT, which does not reflect her abilities or skills.

27. Additionally, where the test booklet indicated "break", the testing proctor read G.G.C. the word "break", but did not offer her a break or take a break. Rather, the proctor continued the test in violation of the established testing protocol printed in the testing materials.

28. Further, the G&T Handbook clearly indicates that parents must review the testing guidelines with their children. The G&T Handbook underscores that the parent should provide the child with a "break" between the administration of the two test sections. Specifically, it states: "Stop. Put down your pencil and close your test booklet. Let your child take a short break before beginning the verbal practice test." See G&T Program Handbook, at p.3, attached hereto and incorporated herewith as Exhibit "B."

29. The G&T Handbook was created by the DOE to allow Parents to familiarize their children with the G&T testing process. The Handbook indicates: "Read the following boldface instructions exactly as they are written. If necessary, you may supplement the directions with your own explanations. The text that is not bold is further instruction for you and should not be read aloud." See Exhibit "B" at 2.

30. The G&T Handbook indicates that Parents should provide their child a break to maximize the child's ability to work through the upcoming assessment and to mimic the conditions of the authentic testing process.

31. The Parents have also come to understand that this year, apparently for the first time, proctors were told to "stop" testing if students answered multiple questions in a row incorrectly. Upon information and belief, this is contrary to the established protocol for the OLSAT and contrary to the DOE's prior practices.

32. Finally, all students at G.C.C.'s test site, at her test time, were forced to leave testing and return to their caregivers at the same time, which meant that they were universally expected to complete the testing at the same time, not at their own pace, as in prior years.

33. Importantly, the Handbook indicates that children will be allowed to take the entire G&T assessment at their own pace, as it is not a timed exam. The DOE handbook specifically

indicates: "both assessments are untimed, which make requests for extended time unnecessary. All children work at their own pace, provided they actively work on completing the exam." *See* Exhibit "B" at 7.

34. Upon information and belief, the protocol of the site where G.G.C. took the assessments forced G.G.C. and all of the children tested to have a limited time in which to take the assessment, so that they could all return to their caregivers at the same time. This negatively impacted the results of G.G.C.'s testing; specifically, the OLSAT assessment as it was the last section of the testing administered to G.G.C.

35. More generally, in addition to G.G.C.'s specific issues described above, this year the number of kindergarten students who scored 97-99% to qualify for G&T dropped significantly – 40% in certain districts – as compared to the number of children last year who qualified.

36. Upon information and belief, the DOE utilized an arbitrary equation to round up the age of students, which in turn mis-calculated their birthdays, placing them in older age bands which caused the scores to be in a lower percentile rank than they logically should have been placed in.

37. While we have no access to the DOE's reasoning for modifying the age band calculation, upon information and belief, the DOE intentionally utilized this inaccurate and illogical strategy, which affected approximately one-third of the children taking the G&T assessment for eligibility the 2015-2016 school year, in order to decrease the number of G&T students citywide.

38. Regardless of the DOE's reasons, the DOE's modification of the age band calculation breaks from the established scoring protocol and negatively affected approximately one-third of the children who took the G&T assessment, including G.G.C.

39. The DOE's age-band rounding consists only of rounding up, not rounding down, and thus it impacts only half of the children assessed. Two-thirds of the children that took the

7

assessments stay in the same age-band after any rounding, but the other one-third are effected by being pushed into the next higher age band. As a result, these children, including G.G.C. are being scored against children who are older, against whom they should not be scored, as doing so contravenes the established test scoring methodology and is also patently unfair.

40. Upon information and belief, the DOE is instituting changes in order to eventually phase the G&T program out entirely and move to a system of only general education.

41. Upon information and belief, the DOE did not utilize the national norms that it purports to utilize for the G&T assessment process.

42. Upon information and belief, the DOE did not accurately or properly correlate the OLSAT and NNAT, resulting in assigning improper percentile rankings to students.

43. Upon information and belief, the DOE did not accurately or properly norm the OLSAT this year for kindergarten testing, creating lower scores for children applying for the G&T programs.

44. While the issues described above are significant and troubling, the crux of the matter underlying this Petition is the DOE's lack of any legitimate due process procedure for appealing G&T assessment results. Shockingly, the DOE limits a parent's right to appeal to within 48 hours after the test administration, despite the fact that scores are not released until two months later. *See* Exhibit "B" at 8.

45. This limited "appeal" process is illogical so as to expect any family to appeal their child's test before they have even received the results of that test. The DOE's process is so flawed as to be in contravention of the most basic tenets of both procedural and substantive due process.

46. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner' " (id. at 333, 96 S.Ct. 893, quoting *Armstrong v.*

*Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62). Due process, however, "is not a technical conception with a fixed content unrelated to time, place and circumstances" (Cafeteria & Rest. Workers Union, Local 473, AFL–CIO v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230, reh. denied 368 U.S. 869, 82 S.Ct. 22, 7 L.Ed.2d 70 [internal quotation marks omitted]; see Mathews, 424 U.S. at 334, 96 S.Ct. 893). Rather, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *State v. Farnsworth*, 75 A.D.3d 14, 20, 900 N.Y.S.2d 548, 553 (4d Dept. 2010).

47. As the Court of Appeals has held, "[t]he essence of procedural due process is that a person must be afforded notice and an opportunity to be heard before government may deprive him of liberty or a recognized property interest." *Matter of Quinton A.*, 49 N.Y.2d 328, 334, 402 N.E.2d 126, 130 (1980). Likewise, the "essence [of] the doctrine of substantive due process prevents the deprivation of life, liberty or property for arbitrary reasons." *Mallinckrodt Med. Inc. v. Assessor of Town of Argyle*, 292 A.D.2d 721, 723, 740 N.Y.S.2d 467, 470 (3d Dept. 2002).

48. The "48-hour" appeal process is completely meaningless and could only apply to the administration of the test that would be obvious to a Parent of a young child. There are very few circumstances that would be obvious to a parent in this situation given the child (who is 4 years old) is in a private room alone with a testing proctor during the assessment.

49. In addition to the fact that results are not provided until two months later, Parents are also not allowed to see their child's exam until June. By that time all of the G&T applications for the 2015-2016 school year already will have been submitted and all seats will have been secured. Assuming, in the instant case, that the Parents are able to confirm some of their concerns regarding G.G.C.'s test in June, there is nothing that can be done at that time to challenge the results, because no process for doing so is afforded.

50. According to the DOE's own stated policies and procedures, there is no process available to parents for challenging errors and inconsistencies that a parent discovers upon reviewing their child's exam in June. Obviously, a Parent would not know if their child's test was mis-scored, improperly bubbled, or if answers were transposed incorrectly during the 48 hour "appeal" period. Thus, there is no actual opportunity for a parent to challenge the scoring of the test, making the process arbitrary and capricious and contrary to a parent's due process rights.

51. Additionally, young children do not have the skills or presence of mind to outline ways in which they were aggrieved during the G&T administration and testing process within a 48 hour period.

52. On top of all of the above, the DOE also does not provide any guidelines or protocols for testing or administration of the test, so parents would not know if they had been harmed until at least April 6, 2015, when they receive their child's test scores.

53. The appeal process that the DOE has laid out for parents is completely irrational and patently unfair on its face.

54. The Parents have been denied a meaningful appeal process. Importantly, the process offered by the DOE is arbitrary and capricious and violates New York Education Law §310 as the Parent could never exhaust it's underlying administrative due process, since the DOE created a "lack of process" and the parent is therefore deprived of any due process right.

55. The DOE has confirmed to the Parents that there is no other method for appealing the test administration or results, and that their case was "closed". *See* Exhibit "A."

56. Despite the clear legal standards governing due process, the DOE's process fails in every regard at the simplest level of both procedural and substantive due process. The DOE has not met the "fundamental requirement of due process" which is an "opportunity to be heard at a

meaningful time and in a meaningful manner." *Farnsworth*. Here, the DOE's 48 hour timeline is not a meaningful time and manner, and the DOE cannot point to any reason to justify its decision to arbitrarily choose this window of time. While due process is "not a technical conception with a fixed content unrelated to time, place and circumstances" (*Farnsworth*), the DOE's 48-hour appeal process does not come close to meeting even a minimum level of reasonableness.

57. Further, the DOE has violated procedural due process by failing to provide reasonable notice and an opportunity to be heard; and the DOE has violated substantive due process by depriving families of a significant property right in education for arbitrary reasons. The actual level of process due is always dictated by any given situation, but there is no reasonable interpretation that would indicate let alone justify the DOE's arbitrary 48 hour process. As described above, that process is meaningless and thus fails to meet even the lowest levels of scrutiny.

58. Further still, the 48 hour "appeal" affords an opportunity only to challenge the testing administration, within an unreasonable timeframe, leaving it to a four year-old to discern whether the test was properly administered, and no process whatsoever is afforded to parents to challenge scoring or any other substantive issue.

59. On April 6, 2015, immediately after test results were provided, the Parents attempted to contact the DOE and received only patent replies that the scores were calculated properly. The Parents specifically tried to avail themselves of the DOE's appeal process at this time and were told that they would have had to commence their appeal two months before they knew their daughter's assessment results.

60. The DOE merely provided the Parents a "walkthrough" of the G&T's generic scoring process utilizing G.G.C.'s raw scores in late April; however no specific questions were answered by

the DOE representatives and the Parents were not allowed to challenge any practice or methodology utilized in the assessments or the administration of G.G.C.'s assessments.

61. The parents then wrote to the DOE to follow up from their "walk though" with specific questions about their child's assessment scoring; however, the DOE did not respond with specific answers. *See* Exhibit "A."

62. Parents have continued to write to the DOE encouraging them to have Pearson look more closely at the statistical errors that were made and to encourage the DOE to reconsider its due process procedure and allow G.G.C. and other similarly aggrieved children a meaningful opportunity for appeal.

63. The DOE has done nothing to indicate that they would offer the Parents, or any other similarly aggrieved parent, any opportunity to appeal the assessments and the administration of same.

**WHEREFORE**, Petitioners request: (a) a declaration and order requiring the DOE to create and implement a citywide appeals policy and process for the G&T assessments that provides parents a means to challenge the results of such assessments after test scores are made available to parents, consistent with the requirements of due process; (b) a declaration and order requiring that such appeals policy and process conclude prior to when admissions decisions are made by the city's G&T programs, and that such process be expedited, if necessary, to ensure same; (c) an order directing DOE to re-score G.G.C.'s G&T OLSAT assessment for the 2015-2016 school year based on the correct "age at the date of testing" and proper norms; (d) an order staying the DOE from validating G.G.C.'s G&T OLSAT assessment and making any admission decision based on such score, and directing the DOE to re-administer the OLSAT assessment to G.G.C. and scoring it in accordance with the proper norms and within the correct age band, prior to May 23, 2015, the date

on which the DOE will offer G&T placements to parents, so that such new results may be used in connection with G.G.C.'s application to The Anderson School; (e) and such other and further relief as the Commissioner deems just and proper.

Dated: New York, New York
      May 5, 2015

                        SHEBITZ BERMAN COHEN & DELFORTE, PC

By:   Matthew J. Delforte
       Jacob Claveloux
1325 Avenue of the Americas, 27th Floor
New York, New York 10019
(212)832-2797

Attorneys for Petitioner
    Parents of G.G.C.

13

## VERIFICATION

STATE OF NEW YORK          )
                           )ss.:
COUNTY OF NEW YORK         )

**PAULA ROGOWSKY COHEN**, under penalties of perjury, deposes and says:

1. I am the Parent of G.G.C., and I am the Petitioner in this matter.

2. I have read and know the contents of the within Petition. The contents are true to the best of my knowledge, except as to matters stated to be upon information and belief, and as to those matters, I believe them to be true.

_____
PAULA ROGOWSKY COHEN

Affirmed to before me this 5th
day of May 2015

_____
Notary Public

GLORIA DORFMAN
Commissioner of Deeds, City of New York
No. 1-6891
Cert. Filed in New York County
Commission Expires Aug. 1, 20__