UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

P.R.C., on behalf of herself individually, and
her child, G.G.C.,

               Plaintiffs,

        -vs-

NEW YORK CITY DEPARTMENT OF
EDUCATION; NEW YORK CITY BOARD
OF EDUCATION; CARMEN FARIÑA, IN
HER OFFICIAL CAPACITY,

             Defendants.

Case No. 15-cv-06851 (AKH)

 

## PLAINTIFF'S MEMORNDUM IN
## <u>OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

Elisa Hyman, Esq.
FRIEDMAN & MOSES
233 Broadway, Suite 901
New York, NY 10279
(212) 732-5800


*Attorneys for Plaintiff*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................... 1

FACTS ............................................................................................................................... 3

ARGUMENT ...................................................................................................................... 3

I.  PLAINTIFF'S COMPLAINT IS NOT SUBJECT TO DISMISSAL
    PURSUANT TO RULE 12(B)(6) .......................................................................... 3

II.  ABSTENTION IS NOT REQUIRED ................................................................... 4

    A.  The Younger Doctrine Was Narrowed To Exclude Abstention in This
        Case ............................................................................................................... 5

    B.  The Younger Doctrine Does Not Apply Because There is Not an
        Opportunity to Raise and Have the Claims Timely Decided ......................... 9

    C.  The Commissioner Has No Jurisdiction Over Plaintiff's Federal or
        State Constitutional Claims .......................................................................... 9

    D.  The Commissioner's Appeal Process Is Extremely Delayed ........................ 11

    E.  The Claims Raised Here are Not Identical to Claims in the Petition ........... 12

    F.  Abstention Does Not Apply Because Plaintiff is Not Seeking to Enjoin
        the Commissioner ........................................................................................ 12

III.  THE COURT SHOULD NOT DISMISS PLAINTIFF'S CLAIMS ...................... 13

    A.  CR-A101 Created a Property Interest in the Sibling Priority Policy
        for Eligible Children as Defined by the Regulation ..................................... 17

    B.  Plaintiff has a Property Interest ................................................................... 21

CONCLUSION ................................................................................................................. 29

## PRELIMINARY STATEMENT

Defendants' motion to dismiss ("Motion") is predicated on a misconstruction of Plaintiff's claims and lacks adequate legal authority to support Defendants' position.[1]

First, in arguing for *Younger* abstention, Defendants failed to cite to controlling U.S. Supreme Court and Second Circuit case law that eliminates any basis for their abstention claim. The U.S. Supreme Court's decision in *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584 (2013) has clarified that the scope of the *Younger* abstention doctrine is narrowed to three specific circumstances, none of which are present here. The cases cited by Defendants (which completely fail to address *Sprint* and subsequent Second Circuit and district court cases addressing this chase) in support of this portion of their Motion (Motion at 6-9) are no longer considered to be representative of the state of the law.

Further, and, notwithstanding this change, abstention would not be appropriate under any applicable standard under the circumstances of this case. Among other things, the Complaint and the Petition to the New York State Commissioner ("Commissioner") do not raise identical claims. *Compare* Complaint with the Petition attached as Exhibit C to the Declaration of Lesley Berson Mbaye, Esq. dated October 13, 2015 ("Mbaye Decl."). Among other things, Plaintiff has not raised claims pursuant to 42 U.S.C. §1983 before the Commissioner. Further, the Commissioner has stated repeatedly that the Commissioner has no jurisdiction over the claims alleged here. Finally, in light of the fact that the Commissioner is not required to render a decision within any particular time frame and, as a matter of course, it could take more than three

---

[1] P.R.C. filed the Complaint on behalf of herself and G.G.C., but will be referred to as "Plaintiff" unless otherwise noted.

years to receive decision before a Plaintiff can even attempt to file an Article 78 proceeding in state Court, any post-deprivation remedy is not adequate.

Second,  Defendant's construction of Plaintiff's claims and their reading of the Complaint misses the mark.  Motion at 2.

 The first claim before this Court is whether Defendants have created a constitutionally protected property interests in the "Sibling Priority Policy" for Plaintiff's child via the promulgation of a municipal regulation called Chancellor's Regulation A-101 ("CR A-101"). Plaintiff alleges that Defendants have created a property interest via CR A-101 and the Sibling Policy generally for all children who satisfied the requirement of that policy.  The Sibling Policy is so important to Defendants that when it was challenged by a group of parents pursuant to an equal protection theory in state court, Defendants fought vociferously to defend it.  In that case, the court found that the policy did not violate the equal protection clause and that its "purpose was to relieve the financial and logistical burdens of families with two or more children who might otherwise have to attend different schools in different parts of the City." *R.B. v NYC Dept of Education* 115 A.D.3d 440, 981 N.Y.S.2d 413 (1st Dep't 2014).  It is Plaintiff's position that CR A-101 has created a cognizable property interest for those children who, under the plain language of the regulation, meet the applicable criteria.

Further, Plaintiff claims that she is entitled to enforce her rights via injunctive relief to facilitate a seat for her child in a school that her brother attends based upon the qualifications set forth in Defendants' own regulation and that her child, G.G.C. has been denied this right.

Second, Plaintiff alleges that Defendants have created a property interest in taking the Gifted & Talented ("G&T") exam.  Further, Plaintiff alleges that G.G.C. is "gifted" and notwithstanding egregious and systemic failures in the administration and scoring of the G&T

test would have an automatic right – and therefore a property interest – in enrolling in the G&T school that C.C. attends.

Plaintiff alleges that the procedures in relation to the above rights are constitutionally infirm and that the lack of an adequate pre-deprivation (or even post-deprivation remedy) violated Plaintiff's Due Process rights.

For the reasons set forth in herein, and upon the allegations in the Complaint and the declaration of Elisa Hyman dated December 21, 2015 ("Hyman Decl."), and the exhibits attached thereto, the Court should deny Defendants' Motion.

## FACTS

The facts relevant to this opposition are set forth in the detailed Complaint, as well as in the Hyman Decl. and the exhibits attached thereto and the Mbaye Decl. and the exhibits attached thereto.  Plaintiff refers the Court to those documents. Relevant facts are set forth within each applicable section of this memorandum.

## ARGUMENT

I.     **PLAINTIFF'S COMPLAINT IS NOT SUBJECT TO DISMISSAL PURSUANT TO RULE 12(b)(6)**

The parties do not seem to have any significant dispute concerning the general legal principles that apply to the Court's determination with respect to a Rule 12(b)(6) motion.  "A Rule 12(b)(6) motion requires the court to determine if a plaintiff has stated a legally sufficient claim for relief." *Wang v. City of New York,* No. 05CIV.4679 (AKH), 2008 WL 2600663 (S.D.N.Y. June 26, 2008) (*citing* Fed.R.Civ.P. 12(b)(6)).  As Defendants note (Motion at 2-3): (a) the Plaintiff need not support her claims through "'detailed factual allegations,' but must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do'" (*see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); (b) the Court

must accept the Plaintiff's factual allegations as true and draw all inferences in her favor ( *See Cleveland v. Caplaw Enters*., 448 F.3d 518, 521 (2d Cir. 2006)); (c) without converting the Rule 12(b)(6) motion to a motion for summary judgment, the Court can rely upon (i) documents that are incorporated by reference; (ii) documents that are not incorporated by reference but were nevertheless relied upon by the Plaintiff  which are "integral"  to the Complaint; and (iii) matters concerning which the Court can take judicial notice. *See Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002).   Among other things, the Court "'may take judicial notice of the records of state administrative procedures as these are public records." *Evans v. New York Botanical Garden, No*. 02 Civ.3591 RWS, 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002)). However, the parties part ways beyond this agreement as to the general governing principles.

The Court should find that the Complaint survives the Motion under the applicable standards.  Plaintiffs have pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and meets the standard for "plausibility" – i.e. "more than a sheer possibility." *U.S. Bank Nat. Ass'n v. Dexia Real Estate Capital Markets,* 2013 WL 2468027  (S.D.N.Y. June 6, 2013) (*citations omitted*). Further, the Complaint contains detailed, non-conclusory, "well-pleaded" and detailed factual allegations, not "naked assertions" that are "devoid of factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

## II.    ABSTENTION IS NOT REQUIRED

The Court should deny Defendants' Motion to dismiss based upon any application of the *Younger* abstention doctrine.  In arguing for application of the *Younger* abstention doctrine, Defendants have failed to bring controlling U.S. Supreme Court and Second Circuit precedent to the Court's attention that has significantly narrowed the scope of cases pursuant to which courts

can apply *Younger* abstention.  For the following reasons, Defendants have not made a colorable

argument for application of the Younger abstention doctrine here.

### A.  The Younger Doctrine Was Narrowed To Exclude Abstention in This Case

"When a Federal court is properly appealed to in a case over which it has by law

jurisdiction, it is its duty to take such jurisdiction . . The right of a party plaintiff to choose a

Federal court where there is a choice cannot be properly denied."  *New Orleans Pub. Serv., Inc.*

*v. Council of City of New Orleans*, 491 U.S. 350 (1989). "Congress, and not the Judiciary,

defines the scope of federal jurisdiction within the constitutionally permissible bounds." *Id.*

(*citing Kline v. Burke Construction Co.,* 260 U.S. 226 (1922)). "Only exceptional circumstances

justify a federal court's refusal to decide a case in deference to the States." *NOPSI*, 491 U.S. at

368,(citing *Willcox v. Consolidated Gas* Co., 212 U.S. 19, 40 (1909)).

In *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584 (2013), the Supreme Court retreated

from the expanding principles of *Younger* abstention to civil proceedings and significantly

narrowed the categories of cases from which federal courts should abstain.

Historically, courts including Second Circuit, had been analyzing *Younger* abstention

issues based on whether three factors set forth in *Middlesex County Ethics Committee v. Garden*

*State Bar Association*, 457 U.S. 423 (1982) were satisfied: "(1) there is a pending state

proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the

federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional

claims." *Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk Cty.*, 805 F.3d

425 (2d Cir. 2015) (citing *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65,

75 (2d Cir. 2003)).  In *Sprint,* however, the Court narrowed the abstention doctrine and held that the "three *Middlesex* conditions ... were not dispositive; they were, instead, additional factors appropriately considered by the federal court before invoking *Younger.*" 134 S.Ct. at 593.

As the Second Circuit recently noted in *Falco,* "[w]ithout completely casting aside the *Middlesex* conditions, the [*Sprint*] Court clarified that district courts should only abstain from exercising jurisdiction under the *Younger* abstention doctrine in three "exceptional circumstances": (1) "ongoing state criminal prosecutions," (2) "certain civil enforcement proceedings," and (3) "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk Cty.*, 805 F.3d at 427 (*citing Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. at 590-591). "These three 'exceptional' categories ... define Younger's scope." *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. at 590-591.[2]  Further, the *Falco* Court noted that "it remains unclear how much weight we should afford" the *Middlesex* factors in the wake of *Sprint*.  *Falco*, 805 F.3d at 427.  Several Second Circuit and district court decisions have recognized the change in the law and narrowing of *Younger* abstention in light of *Sprint*.  *See, e.g.*

The Court's rationale for clarification in *Sprint* is that reliance on the *Middlsex* factors alone "would extend *Younger* to virtually all parallel state and federal proceedings ... where a party could identify a plausibly important state interest."  *Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk Cty.*, 805 F.3d at 590. "In the paradigm situation calling

---

[2] Apparently, this is not the first time the Office of the Corporation Counsel has failed to cite to the controlling precedent on the question of abstention. *See Stahl York Ave. Co., LLC v. City of New York*, No. 14 CIV. 7665 ER, 2015 WL 2445071 (S.D.N.Y. May 21, 2015) ("[a]lthough Defendants initially argued that the Court should abstain from exercising its jurisdiction pursuant to the doctrines of Colorado River abstention and Younger abstention, they withdrew the latter argument in their reply brief in light of controlling Second Circuit precedent that was not referenced in their initial moving papers. *See* Defs.' Reply at 1 (Doc. 19) (*citing Sprint Commc'ns, Inc. v. Jacobs*, —U.S. —, 134 S.Ct. 584, 187 L.Ed.2d 505 (2013)").

for *Younger* restraint, the state defendant brings a federal action challenging the statute [which is simultaneously being applied against him]." *Torres v. DeMatteo Salvage Co.*, 34 F. Supp. 3d 286 (E.D.N.Y. 2014) (*citing authorities omitted*).

In their Motion, Defendants fail to cite to any of the relevant Supreme Court or controlling Second Circuit precedent, citing instead mainly authorities from the 1980's and 1990's and urging the Court to strictly apply the *Middlsex* factors based on the 1996 case of *Pinckney v. Bd. of Educ. of Westbury Union Free Sch. Dist.*, 920 F. Supp. 393 (E.D.N.Y. 1996). Motion at 6-9.  In light of *Sprint* and *Falco*, *Pickney*, as well as the other authorities that Defendants rely upon in their Motion, are no longer good law.

Even under the more expansive *Middlesex* factors, for the reasons discussed herein, abstention would not have been warranted.  However, now, in light of *Sprint*, there is no colorable argument that an appeal to Commissioner meets the narrowed *Younger* abstention test set forth by the Court in *Sprint*: the Commissioner's appeal, initiated by Plaintiff to try to exhaust her state law remedies via a Petition which does not, as Defendants contend, raise all of the identical claims she raises here (Motion at 1) is neither a criminal proceeding or a state civil proceeding "akin to criminal prosecution." *Sprint* at 134 S. Ct. at 590-591.

Nor is this administrative appeal "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions."*Id*.  Even before *Sprint*, *Younger* abstention is inapplicable when "the federal plaintiffs are also plaintiffs in the state court action" and "the plaintiffs are not attempting to use the federal courts to shield them from state court enforcement efforts." *Crawley v. Hamilton County Comm'rs*, 744 F.2d 28, 30 (6th Cir.1984).  "The jurisdictional sword that sustains federal rights should not be swiftly sheathed

simply because a concurrent parallel attack has been mounted in the state courts." *United Fence & Guard Rail Corp. v. Cuomo*, 878 F.2d 588, 595 (2d Cir.1989).

While the law is evolving in this area, at least two courts applying *Sprint* have refused to apply abstention in cases that do not fall strictly within the original intent of *Younger*. *Ferraro v. New York City Dep't of Educ.*, No. 13-CV-5837 KAM JO, 2015 WL 1476392 (E.D.N.Y. Mar. 31, 2015) (refusing to apply Younger abstention where the plaintiff had also filed and had pending a state court action seeking a "civil remedy for a claimed violation of his rights under state law"); *Torres v. DeMatteo Salvage Co.*, 34 F. Supp. 3d 286 (E.D.N.Y. 2014)(citing *Devlin v. Kalm*, 594 F.3d 893 (6th Cir. 2010))(refusing to apply *Younger* abstention when Plaintiff had also filed an administrative complaint with the Department of Transportation).

Here, (a) the administrative action at issue was initiated by Plaintiff, not the government, (b) the action does not raise identical claims and (c) it does not "involve 'adjudicative authority ... invoked ... to sanction [the federal plaintiff] for commission of a wrongful act.'" *Accord*, *Torres v. DeMatteo Salvage Co.*, 34 F. Supp. 3d 286 (E.D.N.Y. 2014). Further, if an actual state court proceeding involving state law does not justify abstention, an administrative appeal to the Commissioner of Education cannot satisfy the *Sprint* standard.

Nor is there anything magical about "education" that should not be addressed by federal courts or intruded upon by the federal government. As this Court is aware, Congress elected provide for concurrent jurisdiction in state and federal courts involving the educational of children with disabilities under the Individuals with Disabilities Education Improvement Act ("IDEA") as well as pursuant to Section 504 of the Rehabilitation Act of 1974. *M.M. v. New York City Dep't of Educ.*, 26 F. Supp. 3d 249 (S.D.N.Y. 2014); *H.C. v. New York City Dep't of*

*Educ.*, No. 14 CIV. 1927 AKH, 2015 WL 1782742 (S.D.N.Y. Apr. 10, 2015). In fact, the U.S.

Supreme Court has ruled upon several constitutional issues in the education arena.

### B.  The Younger Doctrine Does Not Apply Because There is Not an Opportunity to Raise and Have the Claims Timely Decided

However, even *assuming arguendo* that the Commissioner appeal procedure initiated by

Plaintiff to try to exhaust her administrative remedies does fall into the third *Sprint* category

(which it does not), even under the pre-*Sprint*, more expansive abstention doctrine,abstention

"naturally presupposes the opportunity to raise and *have timely decided* by a *competent state*

*tribunal the federal issues involved.*" *Gibson v. Berryhill*, 411 U.S. 564, 577, (1973) (emphasis

added). *Younger* abstention was never warranted when "state law clearly bars the interposition of

the constitutional claims" and the state proceedings "afford an adequate opportunity to raise the

constitutional claims." *Middlesex County Ethics Comm. v. Garden State Bar Assn*., 457 U.S.

423, 431-432 (1982).

Here, the Commissioner has repeatedly stated that there is no authority to hear the claims

raised.  Further, there are no timelines for the Commissioner's decisions and the average length

of time for those decisions to be issued is approximately three years.

### C.  The Commissioner Has No Jurisdiction Over Plaintiff's Federal or State Constitutional Claims

The Commissioner has unequivocally and repeatedly held that the Commissioner lacks

jurisdiction to determine issues of constitutional law. *In re Stephen Lamont*, Dec. No. 16, 054

(April 21, 2010). [3]   Further, the Commissioner has repeatedly stated that the appeal process is

---

[3] The Commissioner's decisions are published at
http://www.counsel.nysed.gov/Decisions/dcommissionersdecisions.

"not the proper forum for litigating novel issues of constitutional law, particularly when they have not previously been subject to judicial review." *See In re Janet Mazzi, Dec. No. 16,824* (August 31, 2015)*; In re W.Z. and A.Z.,* Dec. No. 16,793 (August 31, 2015); *Appeal of N.C.*, Dec. No. 16, 805 (August 3, 2015); *Appeal of Jennifer Geiger*, Dec. No. 16,379  July 20, 2012); *In re Ross Global Academy Charter School*,  Dec. No. 16,194 (January 19, 2011). Rather, "[a] novel claim of constitutional dimension should properly be presented to a court of competent jurisdiction." *In re Kevin C. Murphy*, Dec. No. 16, 765 (June 4, 2015), *In re Denise Zacarro*, 16,336 (March 19, 2012).[4]

Further, when, as here, the Court is asked to resolve a purely constitutional legal claim, review by the courts, and not an appeal to the Commissioner, is the proper avenue.  *See G.D.S. ex rel. Slade v. Northport-E. Northport Union Free Sch. Dist.*, 915 F. Supp. 2d 268 (E.D.N.Y. 2012) (the equal protection claim "does not involve technical or policy considerations within the Commissioner's particular field of expertise, but rather is within the conventional wisdom of this Court").[5]  While *G.D.S.* concerned exhaustion, it stands for the proposition that constitutional claims are not the kinds of "technical or policy considerations" that are within the purview of the Commissioner or that implicate serious educational interests such that abstention would be appropriate under the *Sprint* standard. *Id.*

Whether a New York City Chancellor's Regulation can create a constitutionally protectable property interest seems to be a matter of first impression in this Circuit.  There is

---

[4] Bizarrely, in the past, the Commissioner has both held that he does not have jurisdiction and then arbitrarily decided constitutional claims without authority. *G.D.S. ex rel. Slade v. Northport-E. Northport Union Free Sch. Dist.*, 915 F. Supp. 2d 268, 275-76 (E.D.N.Y. 2012). Although "an administrative agency is required to follow its own precedent" (*In re Charles A. Field Delivery Serv., Inc.*, 66 N.Y.2d 516, 518, 498 N.Y.S.2d 111, 488 N.E.2d 1223 (1985)), it appears that the Commissioner's attorneys do not ascribe to this principle.

[5] *See also Walker v. Board of Education*, 78 A.D.2d 982, 983, 433 N.Y.S.2d 660 (4th Dept.1980); *H. v. New York Medical College*, 88 A.D.2d 296, 299, 453 N.Y.S.2d 196 (2d Dept.1982); *Rackmyer v. Gates–Chili Cent. School Dist.*, 48 A.D.2d 180, 183, 368 N.Y.S.2d 636 (4th Dept.1975).

only one published decision raising the issue, but finding it unnecessary to resolve the matter. *J.G. v. Mills*, No. CV-04-5415 ARR, 2006 WL 8066678 (E.D.N.Y. July 6, 2006).  Thus, the Commissioner does not have authority to consider this issue.

### D.  The Commissioner's Appeal Process Is Extremely Delayed

The Commissioner's office is two and three years delayed in terms of issuing decisions. While the Commissioner occasionally seems to issue a decision within a reasonable time frame, parents can wait three years or more for an answer. *See, e.g., In re M.C. on behalf of her daughter S.C.*, Decision No. 16,850 (issue arose in fall 2011, petition was filed in October 2011, decision issued November 2015);  *In re Charles Soriano*, Decision No. 16,849 (petition was filed in June 2012, decision issued November 2015); *In re MIB*, Decision No. 16,847 (issue arose in February 2012, decision issued November 2015); *In re MIB*, Decision No. 16,846 (issue arose in fall 2013, decision issued November 2015); *In re Bellport United Methodist Church* Decision No. 16,783 (issue arose in 2011, decision issued July 2015)16,783   In fact, a review of the publically available decisions show that three years is the norm.[6]  In fact, there is no time frame for the Commissioner to issue a decision.  Thus, the decision could be delayed indefinitely, and Plaintiff would have no recourse.   Since abstention "naturally presupposes" the opportunity to have claims "*timely* decided" (*Gibson v. Berryhill*, 411 U.S. 564, 577, (1973)), waiting three, two or even one more year for a decision is not "timely" within the context of this action.

Moreover, getting through the Commissioner-appeal level would be only the first step; one cannot file an Article 78 until that step has been completed and no action would lie to force the Commissioner to issue a decision in a particular time-frame as the law does not require the

---

[6] *In re Denise Zacarro*, 16,336 (March 19, 2012) (concerning 2009 matter)
http://www.counsel.nysed.gov/Decisions/volume51/d16336

Commissioner to do so. *See* Education Law §310.  Moreover, the extent that the Plaintiff was not required to exhaust her constitutional and Section 1983 claims in the first instance, Younger abstention would not, in any event, be appropriate, particularly in light of the Commissioner's recent pronouncements that the Commissioner has no jurisdiction over the issues she raises.

### E.  The Claims Raised Here are Not Identical to Claims in the Petition

Contrary to Defendants' claims, the Petition filed by plaintiff with the Commissioner does not raise "identical" claims to the Complaint.  A side-by-side review of the Petition and the Complaint, shows that there are several claims raised in the Complaint that are not raised in the Petition, *to wit*, claims concerning the Sibling Priority Policy as generally set forth in CR-A101 as well as any claims raised pursuant 42 U.S.C. §1983. As noted above, Plaintiff is not required to exhaust her claims pursuant to 42 U.S.C. §1983 or her constitutional claims*. See G.D.S. ex rel. Slade v. Northport-E. Northport Union Free Sch. Dis*t., 915 F. Supp. 2d 268, 275-76 (E.D.N.Y. 2012).[7]

### F.  Abstention Does Not Apply Because Plaintiff is Not Seeking to Enjoin the Commissioner

However, even *assuming arguendo,* that those two conditions were met, *Pinckney v. Bd. of Educ. of Westbury Union Free Sch. Dist*., 920 F. Supp. 393 (E.D.N.Y. 1996) (overruled by *Sprint*) relied on by Defendants make clear that *Younger* abstention does not apply to the exact situation here: *i.e.* where a plaintiff has filed an administrative appeal and, while the appeal is pending, files a federal action seeking relief before the administrative proceedings are complete. *Id.*  In *Pinckey*, the court found that Younger abstention is only raised when a plaintiff seeks to enjoin the state proceedings, which is not what Plaintiff seeks here.

---

[7] *Walker v. Board of Education*, 78 A.D.2d 982, 983, 433 N.Y.S.2d 660 (4th Dept.1980), *H. v. New York Medical College*, 88 A.D.2d 296, 299, 453 N.Y.S.2d 196 (2d Dept.1982), *Rackmyer v. Gates–Chili Cent. School Dist.*, 48 A.D.2d 180, 183, 368 N.Y.S.2d 636 (4th Dept.1975).

Thus, the Court should not dismiss this action pursuant to the *Younger* abstention doctrine.

### III.    THE COURT SHOULD NOT DISMISS PLAINTIFF'S CLAIMS

The Fourteenth Amendment provides, in relevant part, that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  In adjudicating a due process claim, the Court considers "two distinct issues: 1) whether plaintiffs possess a liberty or property interest protected by the Due Process Clause; and, if so, 2) whether existing state procedures are constitutionally adequate." *Kapps v. Wing*, 404 F.3d 105, 112 (2d Cir.2005) (citations omitted).

Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972).

Municipal and local regulations and government policies can create a property interest protected by the New York State and U.S. Constitutions. *Basciano v. Herkimer*, 605 F.2d 605 (2d Cir.1978) (city administrative code created a property right);  in receipt of accident disability retirement benefits, where the code required officials to give benefits to applicants who met specified criteria); *Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009) (New York City regulation created property interest);  The origin of a property interest must have "a discernible source, for example, a contract, an unwritten custom or rule, a statute, a written regulation whether official or otherwise." *Sevor v. Nenni*, No. CIV-85-375E, 1987 WL 8947 (W.D.N.Y.

Apr. 3, 1987).  Accordingly, a legitimate entitlement may be created expressly by state statute or regulation or may arise from government policies or a "mutually explicit understanding" between a government employer and employee. *Perry v. Sindermann*, 408 U.S. 593, 601–02 (1972). *Stana v. Sch. Dist. of City of Pittsburgh*, 775 F.2d 122 (3d Cir.1985) (governing policy can create property interest)

Where a statute or regulation limits administrative discretion or, if administrative action is required, the criteria for satisfying them are all objective, a property interest will lie. *Kapps v. Wing*, 404 F.3d at 112, 114 (state regulations created a property interest in the receipt of Home Energy Assistance Program ["HEAP"] benefits for qualified applicants, as all of the factors in "assessing eligibility are objective, and as such are ones over which HEAP administrators have no discretionary control."). "When determining whether a plaintiff has a claim of entitlement, we focus on the applicable statute, contract or regulation that purports to establish the benefit." *Martz v. Vill. of Valley Stream*, 22 F.3d 26, 30 (2d Cir.1994).

Whether Plaintiff has stated a claim for her school of choice under New York State Education Law or the Constitution (Motion at 10-11) is not at issue.  Plaintiff does not make such a claim.

 Rather, the questions presented for the Court are whether Defendants – as part of the municipality – have created property interests *via* this particular Chancellor's Regulation and/or government policy.  The cases cited by Defendants (Motion at 11) are not applicable to the theories presented here and do not foreclose Plaintiff's arguments.  *In Bennett v. City Sch. Dist. of New Rochelle*, 114 A.D.2d 58, 497 N.Y.S.2d 72 (1985) the court addressed whether (a) "Education Law article 90 or the education article of the State Constitution (NY Const, art XI, §1) imposes an affirmative duty upon a school district to implement a full-time education

14

program for all students identified as gifted in the district;" and (b) "whether a lottery method of selecting a limited number of students from a group of eligible applicants for participation in a full-time program for gifted children is either arbitrary and capricious or violative of the equal protection clauses of the Federal Constitution (US Const, 14th Amend, § 1) or the State Constitution (NY Const, art I, §11)."  Neither question is presented here.  *S*imilarly inapplicable is *In New York Civil Liberties Union v. State*, 4 N.Y.3d 175, 824 N.E.2d 947 (2005 N.Y.), the plaintiffs lodged challenges concerning school funding pursuant to the New York State Constitution and charged that the Commissioner failed to comply with his own regulations taking remedial actions with respect to failing school, "failed adequately to comply" with their own regulations mandating such remedial action based on the Court's finding that the language was discretionary. *Id.*  Further, this case does not implicate the Court's decision in *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973) (Motion at 11), as Plaintiff is not arguing about whether education is a fundamental, constitutional right.  Contrary to Defendants' allegations, there is no "unequivocal case law" (Motion at 11) barring the claims here.

To date, only one court has had the opportunity to considered whether the Chancellor's Regulations create a property interest, but determined that resolution of that issue was not necessary, as the court found sufficient interests present in New York State law and regulations. J.*G. v. Mills, No.* CV-04-5415 ARR, 2006 WL 8066678 (E.D.N.Y. July 6, 2006).

However, under applicable case law, the Chancellor's Regulations constitute the type of municipal ordinance, regulation and policy that could certain create a property interest.

Caselaw defines the New York City Department of Education (DOE) as a municipal agency. *T.Z. v. City of New York,* No. CV-05-5111, 2007 WL 2077730 (E.D.N.Y. July 18, 2007);

*Council of Sch. Sup'rs & Adm'rs v. New York City Dep't of Educ.,* 87 A.D.3d 883, 929 N.Y.S.2d 578 (1ˢᵗ Dep't 2011).

> According to the Panel for Educational Policy ("PEP") By Laws:
>
> The Board of Education of the City of School District of the City of New York is created by the Legislature of the State of New York and derives its powers from State law.
>
> The thirteen member body designated as the Board of Education in section 2590-b of the Education Law shall be known as the Panel for Educational Policy. The Panel for Educational Policy is a part of the governance structure responsible for the City School District of the City of New York, subject to the laws of the State of New York and the regulations of the State Department of Education. Other parts of the structure include the Chancellor, superintendents, community and citywide councils, principals, and school leadership teams. Together this structure shall be designated as the Department of Education of the City of New York. The members of the Panel for Educational Policy are appointed according to law as follows: one member is appointed by each Borough President and eight members are appointed by the Mayor. [8]

*See also* N.Y. Educ. Law §2590-g. Further, pursuant to Education Law 2590-g(1) the PEP "shall undertake a public review process prior to approving the following proposed items pursuant to regulations proposed by the Chancellor and the Panel and any amendments made thereto."N.Y. Educ. Law §2590-g(1).[9]

For purposes of the Motion, and for the reasons set forth below, the Court should not dismiss Plaintiff's claims at this preliminary stage as Defendants have failed to show that Plaintiff has not established plausibility– i.e. "more than a sheer possibility" - that her claims, albeit novel, are valid. *U.S. Bank Nat. Ass'n v. Dexia Real Estate Capital Markets,* 2013 WL 2468027 (S.D.N.Y. June 6, 2013). Plaintiff should have the opportunity to establish the legitimacy of her claims, given the serious nature of the interests at stake.

---

[8] *See* Preamble to the "Bylaws of the Panel for Educational Policy of the Department of Education of the City School District of the City of New York" ("PEP Bylaws"), http://schools.nyc.gov/NR/rdonlyres/B432D059-6BFE-4198-8453-466FDE2B22D5/69835/PEPBylawsFinal91409.pdf.

[9] *See* also *P.I. ex rel. R.I., Sr. v. New York City Bd. of Educ.*, 10 Misc. 3d 1073(A), 814 N.Y.S.2d 891 (Sup. Ct. 2006) (unreported) (recognizing the developing state of the law on the powers of the City's Chancellor and the Board of Education).

**A.  CR-A101 Created a Property Interest in the Sibling Priority Policy for Eligible Children as Defined by the Regulation**

As alleged in the Complaint, Plaintiff asserts that there are distinct property interests that were created by Defendants.  First, Plaintiff claims that G.G.C., as a sibling of a New York City public school student, had a property interest in the Sibling Priority Policy contained in CR A-101. Compl.¶17-19.

As set forth above, as of the date the complaint was filed, Defendants have adopted a Sibling Priority Policy for admissions to public schools. Compl.¶ 18.  The Sibling Priority policy has been codified in  CR A-101, which governs admissions processes. Compl.¶ 18.  Until August 27, 2015, and at all times during the facts at issue here leading up to the filing of the Complaint, the version of CR A-101 that was in effect had been issued on October 31, 2013. *See* Hyman Decl. Ex. A.

In a section entitled "Admission Procedures,"  CR A-101 sets for the policy for "Sibling Priorities" as follows:

1.   For purpose of assignment priority, a sibling is a brother or sister (including half–brothers, half-sisters, stepbrothers, stepsisters, foster brothers, foster sisters) of the applicant, who lives in the same household.

2.   Schools maintain responsibility for verifying sibling status before assignments are made.

3.   Siblings of students already pre-registered or enrolled at an elementary school at the time of application submission are given sibling priority for admission into elementary school programs for which they meet the eligibility requirements as described below, subject to available seats.

4.     In a K–5, K–6, K–7, or K–8 elementary school, an applicant can be granted sibling priority only if the sibling is pre-registered or enrolled in the school at the time of application submission, and will be in grade 5 or below at that school at the start of the following September.

CR A-101(II)(A)(1)-(4) (*emphasis added*).  A footnote to the title states "[s]ibling priorities are granted only at the elementary school level." CR A-101(II)(A)(1)-(4) at fn 4.

CR A-101 carves out a separate section called "Admission to Kindergarten," which is split into different procedures for "zoned" and "non-zoned" schools.

For "zoned" schools, the regulations contains the following provisions:

1. Zoned schools are obligated to serve all students residing in their zone, space permitting, regardless of when families show up to register.  Applicants must be admitted to zoned schools in the following order of priority:

    a. Zoned students whose verified siblings are pre-registered or enrolled at the time of application submission and will be enrolled in grades K-5 in the school at the start of the following school year in September;

    b. Zoned students other than those in (a) above applying to the zoned school;

    c. If space allows, and if the Office of Student Enrollment deems appropriate based on district needs, offers may be made for the following priority groups, in the order outlined below. Only the Office of Student Enrollment may authorize the placement of non-zoned students out of this priority order; for example, for students who cannot be accommodated at their zoned school, or for special programs, such as dual language or inclusion classes for students with Autism Spectrum Disorders.

    d. Students whose verified siblings are pre-registered or enrolled at the time of application submission and will be enrolled in grades K-5 in the school at the start of the following school year in September who are not zoned to the school but are residents of that district;

    e. Students whose verified siblings are pre-registered or enrolled at the time of application submission and will be enrolled in grades K-5 at the start of the following school year in September who are residents of another district;

    f. Students currently attending the school's pre-kindergarten program who reside outside the school's zone but in the school's district, without a sibling who will be in grades K-5 at the school in the following school year;

g. Students currently attending the school's pre-kindergarten program who reside outside the school's zone and district, without a sibling who will be in grades K-5 at the school in the following school year;

h. Students other than those in (c) and (e) above who are residents of that district;

i. Students other than those in (d) and (f) who are residents of another district.

CR A-101(II)(C)(1)(a)-(i).

For "non-zoned" schools, the regulations contains the following provisions:

2. Applicants must be admitted to non-zoned schools in the following order of priority:

a. In-district students whose verified siblings are pre-registered or enrolled at the time of the application submission and will be enrolled in grades K-5 in the school at the start of the following September;

b. Out-of-district students whose verified siblings are pre-registered enrolled at the time of application submission and will be enrolled in grades K-5 in the school at the start of the following September;

c. Students currently attending the school's pre-kindergarten program who reside in the school's district, without a sibling who will be in grades K-5 at the school in the following school year;

d. Students currently attending the school's pre-kindergarten program who reside outside the school's district, without a sibling who will be in grades K-5 at the school in the following school year;

e. In-district students other than those in (a) and (c) above;

f. Out-of-district students other than those in (b) and (d) above.

CR A-101(II)(C)(1)(a)-(f).

When Defendants revised CR A-101 in August 2015, they did not make any substantive changes to Section (II)(C)(1)(a)-(f). *Compare* Mbaye Decl. Ex. B with Hyman Decl. Ex. A. Neither version of CR A-101 includes any appeals procedures or due process procedures.

19

G.G.C. falls into category (II)(C)(1)(a); Plaintiff lives in the district in which the School is located and C.C., her brother, was attending the School during the 2013-2014 school year. Compl. ¶¶74, 98-99.

While Defendants now argue that this regulation does not mean what it says on its face, even after being served with the Petition (which they claim raises identical allegations), Defendants had an opportunity to clarify CR A-101 and failed to do so in August 2015. Moreover, for zoned schools, Defendants carved out some type of exception for special programs but did not do the same for non-zoned schools.

Nor does CR A-101 refer to or incorporate any other documents by reference in relation to the Sibling Priority Policy. Defendants have no due process procedures or appeals process incorporated into CR A-101. Hyman Decl. Ex. A, Mbaye Decl. Ex. B.

Tellingly, a group of parents tried to challenge the Sibling Priority policy in state court and lost; in that action, Defendants pulled out all of the stops to defend the importance of the policy. *R.B. v NYC Dept of Education* 115 A.D.3d 440, 981 N.Y.S.2d 413 (1st Dep't 2014).  In fact, in the *R.B.* lawsuit, Defendants represented that the "Sibling Priority Policy system was instituted as a means to maintain family unity within schools and to relieve the financial and logistical burdens of families with two or more siblings who might otherwise have to attend different schools in different parts of New York City."  Hyman Decl. Ex. B.

Moreover, Defendants' effort to cite to the "G&T Handbook" as an authority to override the Chancellor's Regulations (Motion at 12) should be dismissed. Defendants argued the contrary position in the *R.B.* litigation: "[P]etitioners attempt to argue that the admissions process set forth in the G&T handbook was binding..... However, this argument is misguided as the G&T

Handbook is only guidance for families and not subject to requirements of Education Law section 2590-g."  *See* Hyman Decl. Ex. B.

Any statement made by Defendants' counsel in their Motion about the weight of the G&T Handbook, its status as a policy either standing alone or in relation to CR A-101, the enforceability of the handbook, and many other claims based on information that is not plainly within the scope of her personal knowledge raises textbook questions of fact that require discovery.  On a Rule 12(b)(6) Motion, it is Plaintiff's allegations, not the unsworn statements by Defendants' counsel impacting the merits of the claims, should be deemed true.

**B.  Plaintiff has Property Interests Protected by the Constitution**

Pursuant to the G&T Sibling Priority Policy, an applicant to a G&T Program school whose sibling is pre-registered or enrolled at the school at the time of the application submission will be given priority placement at the school over other eligible students. Compl. ¶33.  For Citywide G&T Programs, siblings scoring at or above the 97th percentile will be placed first, by percentile rank. Compl. ¶34.  After all eligible siblings have been placed, non-sibling applicants will be placed by percentile rank. *Id*. In order for a sibling to have an automatic priority to enroll in a Citywide G&T Program site, the sibling has to score at least in the 97th percentile or above on the Defendants' G&T assessment. Compl. ¶35.

The G&T tests must be administered in relation to a particular protocol and scored in accordance with the appropriate testing standards. Compl. ¶¶42-53.  Parents are not present during the testing process. Compl. ¶55.  Defendants do not make test administration protocols and procedures public to parents prior to the G&T assessments. Compl. ¶54.  The individuals who administer the tests ("Proctors") are not permitted to speak to parents about any substantive

or administration issue that arises during the test and do not describe the testing administration or conditions to Parents of eligible students. Compl. ¶56.

The only review provided by Defendants in relation to the G&T process is apparently contained in the G&T Handbook: any appeal to the process must be invoked 48 hours within the completion of the administration of the G&T assessment (the "48 Hour Procedure"), well before parents receive any scores and/or before they have notice of the details of the G&T assessment protocols. Compl. ¶72.  Plaintiff alleges that Defendants fail to provide parents with adequate notice of the existence of and access to the 48 Hour Procedure. Compl. ¶73.

When G&T assessment results are released to parents, they only include percentile scores. Parents are not provided access to the test questions, answers or protocols. Compl. ¶64. In order to view a copy of the G&T assessment, a parent must make a written request to Defendants. Compl. ¶65.  The Defendants provide appointments for test review in June of each year. Compl. ¶66.  This year, Defendants allowed parents to make appointments to review G&T assessments in June of 2015. Compl. ¶67.  However, this right to review the G&T test occurs after the applications to G&T Programs are already due and deadlines are past. Compl. ¶68.

Plaintiff alleges that "as a gifted student and a sibling of C.C., G.G.C. had a right to invoke Sibling Priority and gain admission to Anderson, provided that she scored in 97th percentile or above on the Defendants' combined G&T assessment." Compl. ¶78-82.

On February 1, 2015, Defendants assessed G.G.C. for admission to the G&T Program for the 2015-2016 school year. Compl. ¶83.  Plaintiff alleges that Defendants committed various objective errors in the administration and scoring of the test for G.G., among other things: (a) the test protocol calls for a break to be given between the two parts of the test and that children are to be given breaks on an individualized basis as the testing is administered; yet, on the day of the

testing all of the children went upstairs and came back down at the exact same time. Compl. ¶¶87-93, 118-130, 131-155. At the time that the G&T assessment was administered to G.G.C, Defendants had not provided her parents with any notice of (a) testing protocols; (b) what might constitute signs of errors in administration; or (c) notice of any appeals process or the 48 Hour Procedure. Compl. ¶94-95.

Further, Defendants scored G.G.'s test in the incorrect age band, resulting in a lower score. 141. Moreover, after the Parents received the test scores back, they discovered that G.G.C.'s age may have been incorrectly calculated for the purposes of scoring. G.G.C. was scored against children aged "4.9" years old (i.e. four years and nine months old). However, upon information and belief, based on G.G.C.'s age, she should have been scored in relation to students in the "4.8" band (i.e. four years and eight months old). Compl. ¶141.

Within 48 hours of the time of the test, Plaintiff could not be aware of any potential problems with either administration or scoring. Compl. ¶¶87-93, 118-130, 131-155.

On April 6, 2015, the Parents received G.G.C.'s G&T assessment scores via email. Although G.G.C. had scored in the superior range on the verbal reasoning portion of the prior Stanford-Binet, she only scored in the 73rd percentile on the OLSAT test. Predictably, however, she scored in the 99th percentile on the NNAT test. Compl. ¶96. As a result, G.G.C. only received a combined percentile rank in the 93rd percentile for the G&T assessment. Compl. ¶97.

Plaintiff tried many avenues to address this issue, and all were futile. Compl. ¶¶100-130. Finally, she filed an appeal with the Commissioner and was sought and denied a stay. Compl. ¶¶113-115.

As a gifted sibling of C.C., which affords her an automatic entry into the Anderson G&T Program upon her attainment of a particular score, G.G.C. has a property interest in the G&T

23

Program Sibling Policy.  Compl. ¶161.  Plaintiff claims that had G.G.C.'s test not been improperly administered and scored  - on a systemic basis - she would have had an automatic right to enroll in C.C.'s school.

As an applicant who, but for Defendants' conduct, would have had an automatic right to admission to Anderson upon attainment of a particular score, she has a right to have the test administered fairly and accurately and to have due process in relation to the admission process.

Under the principles set forth in *Charry v. Hall*, 709 F.2d 139 (2d Cir. 1983) G.G.C. had a "legitimate claim of entitlement" and a property interest in taking the G&T examination given her status as a child in New York City of the appropriate age. *See* Mbaye Decl. Ex. A.  Further, had she achieved the score of 97%, there is no question that she would have a property interest in enrolling the G&T program; she would have had automatic entry.

As in *Kapps v. Wing*, 404 F.3d 105, 112, 114 (2d Cir.2005), had she scored at the proper percentile, all of the factors in "assessing eligibility are objective" and ones over which the Defendants had "no discretionary control." *Id.  See also Basciano v. Herkimer, 605 F.2d 605 (2d Cir. 1978)* (individuals who  meet eligibility requirements of the City's Employees' Retirement System are entitled to disability retirement benefits under the city's code; "[w]here a scheme such as this gives rise to a valid claim of entitlement to a benefit, a property interest protected by the due process clause of the Fourteenth Amendment is created.")  Further, as the Court held in *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54 (2d Cir.1985), "the question of whether an applicant has a legitimate claim of entitlement to the issuance of a license or certificate should depend on whether, absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." *Yale Auto Parts*, 758 F.2d at 59.

In light of P.R.C.'s allegations that G.G.C. is, in fact, gifted, and possessed a property interest in both taking the test in the first instance and enrolling in the program had she scored appropriately, it cannot lie that she has no reasonable process by which to address legitimate claims concerning (a) lack of notice in the manner of administration; (b) an appropriate process by which to address errors in administration and scoring.  Plaintiff alleges that the test was scored and administered in such an improper way so as to have effectively denied her of having had access to the test at all.

Further, unlike job applicants who have no expectation of employment if they reach a particular score on an exam (*Jackson v. Nassau Cty. Civil Serv. Comm'n*, 424 F. Supp. 1162 (E.D.N.Y. 1976)) Plaintiff alleges that G.G.C. had more than an expectation of enrollment if she achieved a certain score; she was entitled to an available seat at the school, without regard to Defendants' discretion. Compl. ¶34, 34, 53, 161.  Motion at 4.

### C.  Plaintiff has a Property Interest

Plaintiff argues that the property interests here required notice and a predeprivation hearing to satisfy her due process rights.  In the alternative, at a minimum, any postdeprivation procedure had to be adequate to prevent the loss of the right. Defendants have failed to establish that they afforded any appropriate due process.

The *Mathews v. Eldrige* balancing test generally sets out the factors to consider when evaluating what process will be due: (1) the interests of the individual in retaining their property, and the injury threatened by the official action; (2) the risk of error through the procedures used and probable value, if any, of additional or substitute procedural safeguards; (3) and the costs and administrative burden of the additional process, and the interests of the government in efficient adjudication. *Mathews v. Eldrige,* 424 U.S. 319 (1976).

25

"The Due Process Clause grants the aggrieved party the opportunity to present his case and have its merits fairly judged. Thus it has become a truism that 'some form of hearing' is required before the owner is finally deprived of a protected property interest. "*Board of Regents v. Roth*, 408 U.S., at 570-571, n.8.  A government agency "may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 434 (1982).  The "the timing and nature of the required hearing" "will depend on appropriate accommodation of the competing interests involved." *Goss v. Lopez*, 419 U.S. 565, 579 (1975). Those interests include (a) "the importance of the private interest,"; (b) "the length or finality of the deprivation,"; (c) "likelihood of governmental error"; and (d) "magnitude of the governmental interests involved." *Logan*, 455 U.S. at 434 (internal citations omitted).

The Due Process Clause requires "that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."  *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 313 (1950).  As the Court found in *Goss v. Lopez*:

> 'The fundamental requisite of due process of law is the opportunity to be heard,' (internal citations omitted) a right that 'has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to . . . contest.' (internal citations omitted). At the very minimum, therefore, students facing suspension and the consequent interference with a protected property interest must be given some kind of notice and afforded some kind of hearing. 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. (internal citations omitted).

*Goss v. Lopez*, 419 U.S. 565 (1975).

What process is due will be unique depending on the situation: here, Plaintiff has plausibly plead that a post-deprivation remedy of the kind argued by Defendants – i.e. appeal to the Commissioner and an Article 87 court hearing – are insufficient.

First, the Court has generally held that a post-deprivation process is all that can generally be due as a result of a "random and unauthorized" action of a state actor, rather than, as here, as a "result of some established state procedure." *Logan,* 455 U.S. at 434 (*distinguishing Parratt v. Taylor*, 451 U.S. 527 (1981)).  When as here a "deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of post-deprivation procedures will not, ipso facto, satisfy due process."  *Id*. at 435–36.

Moreover, in the arena of educational denials, courts have generally held that notice and pre-deprivation process is required, even when faced with children who commit school-based infractions. *Goss v. Lopez*, 419 U.S. 565 (1975), *Honig v. DOE*, 484 U.S. 305 (1988).  Here, rather than a child committing a disciplinary infraction, there is a five-year old child and a family of three who seek to use the public school system.  A post-deprivation remedy is insufficient to protect against the harm.

Ironically, Defendants cite to *R.B. v. Dep't of Educ. of City of New York*, 115 A.D.3d 440, 981 N.Y.S.2d 413 (2014) as support for their claims (Motion at 8), but it undermines their position that there is an appropriate post-deprivation remedy; in R.B. the Court found that plaintiffs could not file an Article 78 action until such time as they exhausted their remedies with the Commissioner.*Id.*  In fact, the timing of that case demonstrates that the mechanism is infirm: the court denied the petition in August 2013; the First Department did not issue a decision until March 2014.*Id*.  Had the parents ultimately prevailed, they would have lost in any event, because the school year was basically over. *See also Mulgrew v. Bd. of Educ. of City Sch. Dist. of City of*

*New York*, 88 A.D.3d 72, 928 N.Y.S.2d 269 (2011) (dismissing action for failure to exhaust, finding no exception for irreparable harm as there was no evidence that the Commissioner would not decide the issue faster than the state courts).

The very idea of this circular process underscores that these remedies cannot possibly satisfy constitutional muster.

As the Court can see from the Plaintiff's efforts to use the post-deprivation remedy by filing a petition with the Commissioner, Plaintiff's allegations that the process was infirm (if not Kafkaesque) are not speculative.  Plaintiff alleges that (a) Defendants afforded no notice of the testing procedures and protocols; (b) Defendants afforded no notice of any appeals process (including the 48 hours process); (c) Defendants prevented adults from observing the testing sessions and therefore having any way of knowing if the test was not administered to their young children; (d) the 48 hour appeals process is over before scores are released; (e) once scores are released, the protocols and scoring mechanisms are still kept secret; (f) months after it is too late to appeal, parents are allowed to review the tests (but not take copies); (g) even when she tries to file administrative remedies, it requires her to hire counsel and file papers (i) before a tribunal who has no jurisdiction (or, at best, arbitrary and inconsistent jurisdiction) over the underlying claims; and (ii) who has no statutory timeframe; (iii) whose decisions are regularly three years delayed. Compl. ¶¶ 103-185.  Finally, this entire process would have to be exhausted and somehow navigated by the typical New York City parent (without access to funds and/or no-cost-up-front legal services), only to then have to commence a more expensive Article 78 litigation in state court, which could take upward of an additional year.  *R.B. v. Dep't of Educ. of City of New York*, 115 A.D.3d 440, 981 N.Y.S.2d 413 (2014)

If the Court deems any of the rights here to have constitutional protection, it cannot countenance the suggestion that the process proposed by Defendants passes constitutional muster or, at the very least, there are issues of fact that cannot be resolved at this time on a Rule 12(b)(6) motion.

## **CONCLUSION**

For the reasons set forth herein, the Plaintiff respectfully submits that the Court should not grant Defendants' Rule 12(b)(6) Motion.

Dated: New York, New York
       December 21, 2015

FRIEDMAN & MOSES

By:_____/s/_____
Elisa Hyman
Of Counsel
*Attorneys for Plaintiff M.M.*
233 Broadway, Suite 901
New York, New York 10279
Ph: (646) 572-9064
F: (646) 572-9065
Email: elisahyman@gmail.com

29